OPINION OF THE COURT
Hilda G. Schwartz, J.
This is a proceeding brought by petitioner Endeavor Property Holdings, N. V. (Endeavor) pursuant to CPLR article 78 for an order enjoining the respondent Conciliation and Appeals Board (CAB) from enforcing its expulsion order and annulling said order.
The tenant in February, 1981 had filed a complaint of rent overcharge. He alleged that he took occupancy under a one-year lease commencing March 1, 1978 at a monthly rental of $400 and that he thereafter entered into a three-year renewal lease at $468 a month. He complained that the owner had failed to comply with its code obligation to exhibit to the tenant all prior leases and that the prior tenant had paid a lesser monthly rent. Neither lease contained a “42A” rider setting forth the rental history of the apartment back to the base date for rents.
On February 25, 1982 CAB terminated Endeavor’s membership in the Rent Stabilization Association with *542 respect to apartment 4N, 123-25 82nd Avenue, Kew Gardens; the apartment was referred for proceedings to be rent controlled under the city rent law, and its rent was set as $350 per month.
The reason for CAB’s action was the failure of the owner to comply with CAB’s notice of March 13, 1981 and its order and opinion of September 24, 1981.
This notice and order advised the owner he had failed to comply with subdivision A of section 42 of the Code of the Rent Stabilization Association of New York City, Inc. (Rent Stabilization Code) and directed the owner to provide CAB with leases or other evidence of the rented history of the apartment from the base date, or to include a rider of the apartment’s rental history in the tenant’s lease as the owner’s obligation under the Rent Stabilization Law (Administrative Code of City of New York, § YY51-1.0 et seq.) and subdivision A of section 42 of the implementary industry code.
The CAB notice of March 13, 1981, in addition to directing production of copies of all leases and riders from May 31, 1968 to date, stated: “note: In the event any of the above described leases are not available you may substitute copies of rent rolls, rent ledger papers, rent cards or any other evidence showing the name of the tenant and rent paid during the above described period but documentation of the rent charged must be submitted to establish that the rent being charged the complaining tenant is lawful or your answer will be rejected as incomplete.”
Subdivision A of section 42 of the Rent Stabilization Code reads: “Section 42. Lease Agreements. A. (1) Where the owner and tenant have entered into a valid written renewal or vacancy lease with respect to any dwelling unit which provides for the payment of rent in excess of the rent payable under the expiring or prior lease, the stabilization rent shall be automatically increased; provided however, that the owner shall be required to exhibit to (i) the tenant of a dwelling unit subject to the RSL on June 30,1974, who is under a vacancy lease, a copy of the lease in effect on May 31, 1968 and any lease or order subsequent thereto * * * and further, the owner shall be required to include a *543 rider in all leases which clearly sets forth (i) the tenant’s right to examine such prior leases and orders; (ii) the rent payable under such prior leases and orders and (iii) the name of the tenant in the last prior lease.” In addition, section 42 (subd A, par 2) expressly provided that the owner has the affirmative duty to maintain the prior leases to the apartment and to produce them at the request of the board. Subdivision A of section 42 provides: “(2) It shall be the duty of an owner to re-retain all leases described in paragraph 1 of this subdivision and to produce them on demand of the Association, the CAB, the Department of Housing Preservation and Development or a new purchaser for as long as the Rent Stabilization Law or any extension thereof is in effect for such dwelling unit.”
The courts have held that the current owner was required to produce prior leases or substitute documentation of the rent back to the base date and rejected the owner’s argument that it should be excused of its obligation to produce leases in effect prior to the date it took title to the building. (Matter of El-Kam Realty Co. v Prince, NYLJ, Feb. 28, 1979, p 11, col 4; Walden Terrace Assoc. v Popolizio, NYLJ, Feb. 19, 1981, p 12, col 2 [Rodell, J. — referred to but not printed].)
The Court of Appeals, in Matter of Thwaites Place Assoc. v New York City Conciliation & Appeals Bd. (54 NY2d 798), held that the rent stabilization system is “an essentially voluntary, self-policing system of rent regulation” which affords an owner “freedom and flexibility to an extent”, and that accordingly, membership in the Rent Stabilization Association requires owners to exercise “a high degree of good faith and diligence in fulfilling obligations under the law”.
The owner, the petitioner here, in response to the notice of the CAB, submitted a copy of the prior tenant’s lease, stating it had received no other lease records from the prior owner. It also submitted a copy of the tenant’s renewal lease which contained no information about the rental history of the apartment or the tenant’s right to examine prior leases.
The CAB thereafter on September 24, 1981 issued its Order No. 17,716 and directed the owner to comply with *544 subdivision A of section 42 within 15 days, by providing the appropriate rider to the tenant’s lease and by producing all leases for the apartment going back to the base date. The CAB also directed building-wide compliance.
The petitioner did not comply with the board’s Opinion No. 17,716. Instead, it filed with the board an incomplete rider for the apartment 4N lease as well as the apartment’s leases. This contained information commencing January 1, 1976. It also submitted leases commencing with January 1, 1976. The owner, in two affidavits offered as an excuse for noncompliance that he had tried to obtain the earlier rent records but was unable to do so.
The CAB contends that it found the incomplete submission totally useless since it could not determine the present lawful stabilized rent without a complete rental history to the base date. It issued its expulsion Order No. 494 on February 25, 1982.
Thereafter, the owner filed for reconsideration, asserting as an excuse its inability to obtain the necessary records. It further argued that the violation was not severe enough to warrant expulsion. The board rejected same as untimely.
Under the Rent Stabilization Law, the owner alone is responsible for maintaining the records showing the base rents and subsequent increases. Neither the CAB nor any other body is required or authorized by law to maintain such records. That circumstance was not the product of legislative oversight but was one which was specifically proposed and supported by the real estate industry, which contended that owners were capable of co-operating in the maintenance of an essentially self-regulating system and that the obligation of maintaining the records needed to determine lawful stabilized rents should rest with the owner rather than with a centralized body as is the case under rent control.
Recently, in connection with the renewal of the Emergency Tenant Protection Act upon its expiration in June, 1981, it was proposed to introduce a system of central regulation of rents which would have relieved owners of the obligation to maintain such records themselves. That proposal was vigorously opposed by representatives of the real estate industry.
*545 The history of CAB’s efforts to enforce the provisions of subdivision A of section 42 shows a signal of success. It attempted to use suspension of guidelines increases to compel owners to comply. CAB states that in the period of two years after imposition of this penalty, the board did not encounter one instance in which an owner fully complied with subdivision A of section 42. Accordingly, CAB was relegated to the present procedure of notices of tenants’ complaints of overcharge and directing compliance with subdivision A of section 42; advising that upon failure to comply, rollbacks of rents would be ordered and, eventually, conditionally terminating the owner’s membership.
The Court of Appeals in Matter of Thwaites Place Assoc. v New York City Conciliation & Appeals Bd. (supra, p 799) held that expulsion was not “ ‘ “ ‘so disproportionate to the offense, in light of all the circumstances, as to be shocking to one’s sense of fairness. (Matter of Pell v Board of Educ., 34 NY2d 222, 233.)’ ” ’ ” A directive identical to the one at bar was upheld in Matter of Second 82nd Corp. v Popolizio (NYLJ, Aug. 10, 1981, p 7, col 5 [Riccobono, J.]). In dismissing the petition, the court, in pertinent part, concluded: “There is no merit to petitioner’s contention that the Board has acted in an arbitrary and unauthorized manner in view of its own concession of wide-spread lack of compliance by landlords with the requirements of section 42A of the Code and of its unsuccessful efforts to enforce the regulation through direct contact with the RSA during the past two years.” In Matter of Borchard Affiliations v Conciliation & Appeals Bd. of City of N. Y. (NYLJ, Dec. 15, 1981, p 11, col 3 [Stecher, J.]) the court upheld the CAB order which expelled the owner from membership, with respect to the entire building, based upon the owner’s violation of subdivision A of section 42 even though the owner finally came forward with the full rental history during the CPLR article 78 proceeding.
This court finds that there is a rational basis for the order of the CAB expelling petitioner from membership in the Rent Stabilization Association. In view of the high degree of good faith and diligence required of owners, in fulfilling their obligations under the self-policing system of rent regulation, the sanctions imposed by the CAB are not *546 so disproportionate to the offense, in the light of all the circumstances, as to be shocking to one’s sense of fairness.
The petition is dismissed.