OPINION OF THE COURT
Martin B. Stecher, J.
Petitioner seeks to limit its obligation to refund overcharges ordered by respondent (^of 1% of rents collected) to those actually collected by the petitioner.
The facts are essentially undisputed.* In 1974, a prior owner petitioned for a hardship increase. In 1977, the increase was granted retroactive to 1974. Part of the increase was contingent on the resolution of the landlord’s real property tax liability, probably a substantial expense item in landlord’s presentation. The landlord was obligated by the Conciliation and Appeals Board (CAB) order to inform the CAB within 60 days after resolution of the assessment controversy for the year 1975/1976. On December 1,1978, a judgment was entered reducing the assessed valuation from $740,000 to $560,000. The prior owner gave no notice to the CAB but continued to collect rent at the *157 increased level allowed in 1977. As a consequence, all tenants paid m of 1% more rent then they should have from 1974 on.
On July 1,1981, petitioner took title. It expressly denies any of its principals was even aware of the 1977 order, much less its limitations. The CAB offers no basis whatever to believe this is untrue or that there was or is any unity of interest between the petitioner and the prior owner.
On May 18,1982, the respondent requested of petitioner details of the December 1, 1978 judgment, and on July 1, 1983, it issued its order requiring petitioner to “refund” the overcharges collected by its predecessor and by the petitioner.
Petitioner does not dispute its obligation to refund overcharges collected since July 1, 1981. The issue is its liability for the prior period.
Neither party cites any reported case in point each being content to summarize other Judges’ holdings.
The CAB bases its argument on public policy: let each purchaser inquire of the board prior to taking title, what outstanding orders there are so that the successor landlord may enforce the tenants’ rights against the purchaser’s predecessor and, presumably, the seller’s predecessor. The reason for making each buyer the CAB’s policemen, I assume, is the CAB’s manpower (funds) shortage.
Unquestionably, prior CAB orders concerning rent levels, services to be provided and the like, whenever issued, are binding on current owners. It is hardly a buyer’s duty, however, to familiarize himself with tax certiorari proceedings and outcomes determined long before his own acquisition of the property and ascertain their effect on a hardship order made four years before the transfer of title. Such a requirement is arbitrary and unreasonable.
Such a ruling does not put tenants at the mercy of landlords who would rather sell than pay. The CAB had many options: it could have deferred collection of the increasé during the pendency of the tax certiorari proceeding; it could have required that a portion of the increase be placed in an escrow account; it could have required a bond or other undertaking for performance of the condition.
*158 It may not, however, impose this obligation on an innocent purchaser who had no notice.
The petition is granted.

 In distressing fashion respondents’ answer to the petitioner “denies each and every allegation thereof,” including the respondent’s own existence, the order which it now seeks to enforce and the nature of the controversy. It fails to distinguish between fact and law interspersing the factual allegations with dissertations on what other Judges have done. The obvious impropriety of its pleading is dismissed by a statement that its law department is understaffed and that “only” two Judges have “questioned the Board’s answer.” The respondent’s lack of funds argument is chronic and should be addressed elsewhere. Respondents may now join me to my colleagues Justices Wright and Cohen, in their dissents from such violation of the rules of pleading (CPLR 3018, subd fa]).