OPINION OF THE COURT
Richard L. Price, J.
In this CPLR article 78 proceeding, petitioner Charles H. Greenthal Co., Inc., managing agent of the subject building, seeks to set aside amended order and opinion No. 17,467 issued by the New York City Conciliation and Appeals Board (CAB) establishing a tenant’s stabilized rent, on the grounds that it fails to comply with" the instructions and order issued by this *796 court when granting petitioner’s prior article 78 petition. Petitioner challenges the procedures upon which the CAB opinion is based and seeks an order from this court directing respondent New York State Division of Housing and Community Renewal, successor to the CAB, to recompute a lawful stabilized rent. For the reasons which follow, this article 78 petition is denied.
PRIOR PROCEEDINGS
Petitioner has been the managing agent of premises 61 Jane Street, New York, N. Y., since May 1979, two months after the current owner, Jane Street Associates, acquired title to the building. At the time, tenant Garcia was occupying apartment 18-M pursuant to a second renewal lease. In January 1980 tenant Garcia filed a complaint with the CAB alleging that his rent was excessive. (The lease in effect at that time showed a monthly rental of $492.87.) The CAB served upon petitioner a copy of the complaint of rent overcharge together with a demand for a complete rental history of the subject apartment as required by the Rent Stabilization Law of 1969 (RSL; Administrative Code of City of New York § YY51-1.0 et seq.) and the Code of the Rent Stabilization Association of New York City, Inc. § 42 (A) (Code), in order to determine whether the rent charged Garcia was a lawful stabilized rent. Petitioner’s response to the demand for rent data was that the owner had acquired the premises in 1979 and did not have rent records of the previous owner dating back to the base date. The CAB issued a conditional expulsion order expelling the subject apartment from the Rent Stabilization Association. Petitioner brought an article 78 petition seeking judicial review of CAB’s conditional expulsion order. In a judgment dated March 17, 1982, this court granted petitioner’s article 78 petition which annulled the order and remanded the matter to the CAB for further proceedings. This court directed the Board to give the petitioner every opportunity to comply with Code § 42 (A) or “demonstrate the impossibility of compliance”. (Matter of Greenthal & Co. v New York City Conciliation & Appeals Bd., Sup Ct, NY County, Mar. 17,1982, index No. 21894/81, Price, J.) The court noted the severity of the sanction imposed, namely, expulsion of the subject apartment from rent stabilization, and the good-faith showing of petitioner that it did not “intentionally default” in supplying prior leases. (Matter of Greenthal & Co. v New York City Conciliation & Appeals Bd., supra.)
The CAB appealed the court’s decision to the Appellate Division, First Department. (Matter of Greenthal & Co. v New York City Conciliation & Appeals Bd., 97 AD2d 681.) While the *797 appeal was pending, the CAB, on August 12, 1982, adopted the new procedure challenged herein, whereby a current rent roll rather than full rental records could be used as an alternative method to establish an initial stabilized rent. The alternative method permitted an owner of rent-stabilized apartments who could not supply rent history data to avoid expulsion.
When, on October 4, 1983, the Appellate Division unanimously affirmed the judgment of this court remanding the case back to the Board for further processing, the new CAB procedure was in place. The CAB used the alternative procedure to amend its original order and issued opinion No. 17,467, as amended, adjusting Garcia’s stabilized rent to $344.98.
Petitioner now brings this second article 78 petition seeking to set aside the amended CAB opinion or to have it redrafted so that it avoids the “same draconian result previously rejected by Justice Price.”
CONTENTIONS OF THE PARTIES
Petitioner contends that it is still improperly penalized for its inability to produce prior leases, and that the amended opinion does nothing to ameliorate the harsh results rejected by this court.
Petitioner alleges that the new procedure is arbitrary, capricious, and constitutes a taking of property without due process, specifically because it employs a three-prong test that uses the lowest of three calculation methods rather than, as petitioner would prefer, computing an average thereof.
Petitioner argues that the Statute of Limitations bars recovery of the alleged rent overcharge for the period accruing more than three years prior to the commencement of tenants’ complaint. It is further contended by petitioner that the CAB failed to recognize the installation of new windows in the apartment so that the cost could be reflected in an increased rent.
The respondent contends that the Board’s order based on the new procedure is supported by a rational basis and is therefore entitled to judicial affirmance. Respondent also argues that there is no Statute of Limitations for rent overcharge, relying for this proposition on RSL § YY51-6.0 (c) (3) and case law. In addition respondent alleges that the installation of new windows does not entitle the owner to an increase in rent since the owner failed to obtain the written consent of the tenant as required by Code § 20 (C) (1).
*798 ISSUE
The issues before this court are twofold:
(1) whether the CAB amended opinion carried out the intent of this court’s order; and
(2) whether the procedure used to establish tenant’s stabilized rent effectuates the intent of the Rent Stabilization Law and Code on its face and as applied to the facts of this case.
DISCUSSION
Petitioner’s first contention, that the CAB’s amended order did not reflect the intent of this court, is based upon petitioner’s incorrect reading of this court’s opinion as prohibiting the imposition of severe .penalties for the owner’s “innocent inability to produce prior leases”.
It is clear from the opinion that it was the penalty of expulsion, “the sanction imposed on petitioner” (Matter of Greenthal & Co. v New York City Conciliation & Appeals Bd., supra, at p 3) that this court rejected as not having “a reasonable basis in the record”. This court implicitly recognized the dilemma faced by the CAB, namely, how to induce compliance with Code § 42 (A) and still avoid the sanction of expulsion, which did not further the intent of rent stabilization. Thus, while this court “laud(ed) the respondents motives and appreciat(ed) the difficulties of its mission”, this court also noted the good-faith efforts of petitioner to obtain the rental data. It was stated moreover that petitioner should be given a hearing on remand to either “comply or demonstrate the impossibility of compliance” with Code § 42 (A) in order that petitioner may avoid default and expulsion from the Rent Stabilization Association. (Supra.)
The CAB itself resolved the dilemma by establishing an alternative method for determining a base rent, thereby avoiding the default of members who found that it was impossible to obtain rent history, either because of innocent loss or destruction, or the willful withholding of such records by prior owners. Respondent’s brief states that the appellate court specifically asked counsel for the CAB whether this case would be processed under the new procedures. Counsel answered in the affirmative and the appellate court unanimously affirmed the remand to the CAB.
Thus, it is clear that the opinion of this court, as well as the affirmance by the Appellate Division, sought a solution short of expulsion whereby section 42 (A) would be enforced and a base stabilized rent established. By remanding the case, this court *799 never intended to immunize petitioner from the application of Code § 42 (A), but only from the penalty of expulsion.
Petitioner, contending that the new procedure is arbitrary and capricious, specifically alleges that there is no rational basis for the CAB to establish tenant’s initial stabilized rent as the lowest amount arrived at pursuant to the three computations. In alleging that the CAB has promulgated a rule inconsistent with the plain meaning of the statutory language of the Rent Stabilization Law, petitioner cites Matter of Trump-Equitable Fifth Ave. Co. v Gliedman (57 NY2d 588 [1982]), for the proposition that such rules of administrative agencies are deemed arbitrary and capricious by the courts and are entitled to reversal.
It is settled law that an agency’s interpretation and construction of its own regulations and the legislation under which it functions will be given special deference by the courts if that construction is not irrational or unreasonable (Matter of Albano v Kirby, 36 NY2d 526, 532 [1975]). It is equally well settled “that in exercising its rule-making authority an administrative agency cannot extend the meaning of the statutory language to apply to situations not intended to be embraced within the statute”. (Matter of Trump-Equitable Fifth Ave. Co. v Gliedman, supra, at p 595.) In Trump, the agency charged with the administration of a statute redefined a statutory term so that its own regulations substituted requirements as preconditions, thereby changing the focus and limiting the reach of the statute.
It is this court’s view that, having considered the history and purpose of the Rent Stabilization Law and Code § 42 (A), the procedure and penalty challenged herein are not out of harmony nor inconsistent with the plain meaning of the statutory language. Code § 42 (A) charges the owner to maintain all prior leases to the apartment and to produce them upon demand in order to prove the legality of the rent charged.
The section provides in pertinent part: “(2) It shall be the duty of an owner to retain all leases described in paragraph 1 of this subdivision [lease in effect on May 31, 1968 and any lease or order subsequent thereto] and to produce them on demand of the Association, the CAB, the [Housing and Development Administration] or a new purchaser for as long as the Rent Stabilization Law or any extension thereof is in effect for such dwelling unit.” (Code § 42 [A] [2].) In the past, the CAB,, using its authority under RSL § YY51-6.0 (e) (10) “[t]o do any and all things necessary or convenient” to carry out the purpose of the Rent Stabilization Law, has prescribed penalties for noncooperating owners as a means of implementing section 42 (A). While these *800 penalties, such as suspension of guidelines increases, expulsion of a building from rent stabilization, and expulsion of the subject apartment have been consistently upheld by the courts (see, Matter of El-Kam Realty Co. [Prince], NYU, Feb. 28,1979, p 11, cols 4-6 [Sup Ct, NY County]; Walden Terrace Assoc. v Popolizio, NYU, Feb. 19, 1981, p 12, col 2 [Sup Ct, Queens County, Rodell, J.]; Matter of Second 82nd Corp [Popolizio], NYU, Aug. 10, 1981, p 7, col 5 [Sup Ct, NY County, Riccobono, J.]; Matter of Borchard Affiliations v Conciliation & Appeals Bd., 93 AD2d 736 [1st Dept 1983], affg NYU, Dec. 15, 1981, p 11, col 3 [Sup Ct, NY County, Stecher, J.]; Matter of Endeavor Prop. Holdings v Conciliation & Appeals Bd., 116 Misc 2d 541 [Sup Ct, NY County, Schwartz, J.]; Basso v New York City Conciliation & Appeals Bd., NYLJ, Oct. 20, 1982, p 14, col 4 [Sup Ct, Kings County, Spodek, J.]), they have proven to be insufficient to compel owners to comply with section 42 (A). They did not, moreover, further the general purpose of rent stabilization, set forth in RSL § YY51-6.0 (c), as amended, as follows: “(1) * * * designed to provide safeguards against unreasonably high rent increases and, in general, to protect tenants and the public interest, and [does] not * * * impose any industry wide schedule of rents or minimum rentals” since the penalties resulted in mass expulsion from the rent stabilization system. The new procedure was adopted in order to provide an alternative method for establishing a base rent so that automatic default and expulsion from rent stabilization could be avoided in cases where the owner does not submit rent records. Under this alternative procedure, the owner is obliged to submit a current rent roll whereby a stabilized rent is established as the lowest figure derived from three tests:
(a) the lowest rent in the same line (plus an adjustment for any renewal lease commencing within the 12 months immediately preceding the month of the owner’s rent roll); or
(b) the complaining tenant’s initial rent, minus the initial guidelines adjustment; or
(c) the prior tenant’s last rent (if corroborated) without any guidelines adjustment.
This procedure too has been upheld by the courts (61 Jane St. Assoc. v Conciliation & Appeals Bd., NYU, May 9, 1984, p 11, col 4 [Sup Ct, NY County, Greenfield, J.]; Matter of General. Realty Assoc. of 12th St. v New York City Conciliation & Appeals Bd., 125 Misc 2d 173 [Sup Ct, NY County, Price, J.]).
Not only does this court consider the new procedure a fair method for establishing a stabilized rent, it also permits the *801 landlord to accept a less harsh penalty than expulsion for his failure to produce required rental data; namely, a stabilized rent based on the three-prong test. Furthermore, the new procedure is not intended by the CAB to make it advantageous to owners not to comply with section 42 (A); it is merely an alternative, calculated to induce compliance with the law and produce a reasonable stabilized rent; the establishment of which is the obligation of all owners in this self-regulatory system. The procedure, therefore, is not out of harmony with nor inconsistent with the plain meaning of the statutory language.
The penalty, namely, the rollback of tenant Garcia’s stabilized rent to $344.98, must be reviewed according to the standard applied by courts in reviewing any penalty imposed by an administrative body; that is, whether such sanction is so disproportionate to the offense in light of all the circumstances as to be shocking to one’s sense of fairness. (Matter of Pell v Board of Educ., 34 NY2d 222 [1974].) According to these standards, this court deems respondent’s determination rational, neither arbitrary nor capricious, less harsh than the previous penalty of expulsion and more effective in carrying out the purpose of the Rent Stabilization Law.
Nor does this penalty constitute a taking of property without due process. (See, Block v Hirsh, 256 US 135 [1921]; Liotta v Rent Guidelines Bd., 547 F Supp 800 [SDNY, 1982].)
STATUTE OF LIMITATIONS
Petitioner’s reliance on CPLR 214 (2) Statute of Limitations for the proposition that tenant Garcia may not recover for rent overcharges which accrued more than three years prior to the filing of his complaint is misplaced.
CPLR 214 (2), imposing a three-year Statute of Limitations, refers to a liability, penalty, or forfeiture created or imposed by statute. The Rent Stabilization Law of 1969, the amended Code and the Emergency Tenant Protection Act of 1974 (L 1974, ch 576, § 4) are statutes setting forth the manner in which lawful stabilized rents are to be established and fair rent increases maintained, in addition to providing penalties for the violation of its provisions. The rent overcharge is not the penalty or forfeiture created by the statute but rather the violation of the statute and, therefore, the application of CPLR 214 (2) would be inappropriate. Furthermore, CPLR 214 (2) is a general Statewide Statute of Limitations and not intended to override specific pronouncements contained in statutes prescribing a different limitation or indicating that there is to be no limitation on *802 particular types of claims. (See, McKinney’s Cons Laws of NY, Book 1, Statutes § 315 [Statutes of Limitation].) Such general Statutes of Limitation, for instance, would not be applied to claims for recovery of rent overcharge under the rent control law (see, Administrative Code § Y51-11.0 [d] [2]) since that statute provides for a two-year Statute of Limitations, or under the recently enacted Omnibus Housing Act (L 1983, ch 403, eff Apr. 1, 1984), covering rent-stabilized apartments, since that law provides for a four-year Statute of Limitations with respect to actions commenced after the effective date. While there is no Statute of Limitations provision in the rent stabilization statutes governing claims for rent overcharges applicable to the case at bar, there are specific provisions relating to rent overcharges and the duty to refund. RSL § YY51-6.0 (c) (3) as amended by the Laws of 1974 (ch 576) required that the Rent Stabilization Code would not be approved unless it provided, for a refund of overcharges back to the base date. The section provides: “for a cash refund or a credit to be applied against future rent in the amount of the excess, if any, of rent paid since January first, nineteen hundred sixty-nine over the permitted level of fair rent increases” (RSL § YY51-6.0 [c] [3]). In addition, Code § 10 (B) expressly recognizes that each member of the Rent Stabilization Association is charged with the duty of refunding or crediting the eligible tenant with the amount of excess rent collected. The section describes the manner of repayment, either by cash refund or monthly credit against future rents, or as ordered or directed by the CAB. The general Statute of Limitations, therefore, should not be applied to refund claims. In addition, at least one opinion in the Appellate Division, First Department, has stated that there is no Statute of Limitations for rent overcharges (see, Matter of Century Operating Corp. v Popolizio, 90 AD2d 731 [Nov. 1982], revd on other grounds 60 NY2d 483). One case, however, concludes that a general six-year Statute of Limitations is applicable to such claims (see, Blodgette v Melohn, 124 Misc 2d 736 [NY City Civ Ct 1984]). The court there reasoned that the 1983 amendment to CPLR 213 (2), excepting claims for rent overcharge from the six-year statute, tended to indicate the Legislature’s belief that the six-year statute was theretofore applicable to such claims. Nevertheless, based on the Appellate Division case and RSL § YY51-6.0 (c) (3) and Code § 10 (B), this court concludes that in claims for rent overcharge prior to April 1, 1984, there is no Statute of Limitations and the complete overcharge can be refunded or credited to tenant as directed by the CAB.
Petitioner further contends that in any event, the owner should not be held responsible for the rent overcharge imposed *803 by a prior owner. Petitioner cites Matter of Century Operating Corp. (supra, at p 733), where the court stated, “The only sums the landlord will have to repay to the tenant are those which it collected as rent after taking title to the building.” The issue in that case, however, was not whether the rent charged was a fair stabilized rent for that apartment; it purportedly was. The issue, and upon which the tenant based its claim, was whether a two-month concession granted in the initial 1966 lease was a personal “bait rental” or a condition of the lease which had to be brought forward in every consecutive lease pursuant to Code § 20. The court stated that the concession was a condition and must be used to lower the already fáir stabilized rent. The facts thus distinguish that case from the case at bar where the CAB determined that the rent charged was in excess of a fair stabilized rent. Furthermore, that case recognized the principle that the landlord must “provide cash refunds or credits for any rent paid since 1969 in excess of the fair rent for the apartment” (supra, at pp 732-733).
The issue of a rent overcharge in excess of the fair rent established for the particular apartment was considered in Coulston v Singer (86 Misc 2d 1001 [App Term, 1st Dept 1976]). The reasoning of the Appellate Term is applicable here although in that case the court was addressing a rent overcharge in a rent-controlled apartment. The court stated that “the tenant * * * was entitled to a credit of the total amount of past overpayments of rent, notwithstanding that only a-portion of the excess rental payments had been made to * * * the current landlord, with the greater amount having been received by his predecessor in interest”. {Supra, at p 1002.) The court further opined: “limiting the credit to the amount actually received by the current landlord, would serve not only to frustrate * * * the ameliorative policy considerations underlying our rent control laws but, in addition, might well give rise to extensive abuses by way of questionable transfers of property for purposes of evading redress for overcharges.” {Supra, at pp 1002-1003.) The court concluded, “That [the landlord] failed to include appropriate protective provisions for contingencies incidental to rent controlled premises when he purchased the building is clearly no basis for imposing unintended burdens or limitations upon the statutory rights of the tenant who was a wholly innocent and powerless bystander in the transfer of the property.” {Supra, at p 1003.)
The relationship between the prior owner and the current owner in a rent-stabilized system was summed up this way, *804 “new owners step into the shoes of the prior owner * * * To hold otherwise would make a sham of the Rent Stabilization Law”. (Manhattan Beach Estates Assoc. v New York City Conciliation & Appeals Bd., NYLJ, Aug. 3, 1981, p 14, col 3 [Sup Ct, Kings County, Dowd, J.].)
Petitioner cites a 1976 CAB opinion, No. 4740 where the CAB ruled that in the absence of evidence of any collusion between the present owner and the former owner, the obligation of the present owner to refund excess rent was limited to such rent actually collected by it and may not be extended to excess rent collected by the former owner. That CAB opinion, however, is not controlling here. Petitioner in the present proceeding was afforded a full hearing before the CAB. The Board then made a determination based upon the particular facts and circumstances of the case. The function of this court in this article 78 proceeding is limited to scrutinizing the record to determine whether there is a rational basis for the agency’s determination evidenced in CAB opinion No. 17,467, or whether the opinion is arbitrary, capricious, or contrary to law. (Matter of Colton v Berman, 21 NY2d 322 [1967].) Upon examination of the record, this court finds there is a rational basis for respondent’s determination and that the same is not arbitrary, capricious or contrary to law.
RENT INCREASE FOR NEW WINDOWS
With respect to the windows, the landlord failed to comply with the requirements of Code § 20 (C) (1) which requires that in order to obtain a rent increase for the installation of new equipment in an occupied apartment, the landlord must get the written consent of the tenant. Since there was no written consent, the CAB was justified in denying the rent increase.
According to the above principles, the petition is dismissed.