OPINION OF THE COURT
Peter Tom, J.
The issue put before the court is whether the present landlord is liable to respondent, a rent-stabilized tenant, for rent overcharges collected by the petitioner’s predecessors-in-interest. The overcharges began in 1975 and continued to July 31, 1984. The property was transferred three times since 1975 with petitioner acquiring title on November 13, 1984.
Petitioner contends that absent collusion an innocent owner is not liable to a tenant for rent overcharges collected by her *734 predecessors-in-interest. Petitioner asserts that she did not collect any rent overcharges from respondent nor did she have any knowledge of any overpayments of rent made by respondent at the time she acquired title.
Respondent became a tenant of the subject premises on September 1, 1975 under a written lease agreement. On May 23, 1981 Michael Ross purchased the property in issue. In October of the same year, respondent filed a petition for rent overcharges with the District Rent Office. On August 16, 1984, an order was issued by the District Rent Administrator finding that respondent was overcharged rent in the sum of $6,286.44 from September 1, 1975 through July 31, 1984 and $93.24 for excess security. On September 5, 1984, Michael Ross filed a petition for administrative review of the order of the Rent Administrator. On September 19, 1984, the subject property was transferred to Rafael Sassouni and Kamiar Torbati. They, in turn, transferred title to petitioner on November 13, 1984. On March 29, 1985 the petition for administrative review was denied.
In this nonpayment proceeding petitioner seeks to recover rent owed from respondent which accrued after petitioner acquired title. Respondent, a pro se litigant, seeks credit for the rent overcharges.
The Appellate Term of the Supreme Court has ruled that the present owner is liable to a rent-controlled tenant for the total amount of past overpayments of rent notwithstanding that a large portion of the excess rental was collected by the predecessor landlord. (Coulston v Singer, 86 Misc 2d 1001 [App Term, 1st Dept]; Almantasser v Hinrichs, NYLJ, Nov. 19, 1979, at 15, col 3 [App Term, 2d & 11th Jud Dists].)
Although the Coulston case (supra) dealt with a rent-controlled tenant, the ruling makes no distinction between a rent-controlled or rent-stabilized tenant. The holding in the Coulston case should apply equally to a rent-stabilized tenant. (See, Matter of Greenthal Co. v State Div. of Hous. & Community Renewal, 126 Misc 2d 795; Levy v Rockville Mgt. Corp., NYLJ, Sept. 17, 1979, at 13, col 1.)
The equities in this case favor respondent and support the legal principle that a succeeding landlord is bound by the misfeasance of his predecessor-in-interest. (Simon v Elkon, NYLJ, Apr. 26, 1976, at 6, col 1 [App Term, 1st Dept]; Matter of St. Joan [New York Conciliation & Appeals Bd.) NYLJ, Sept. 1, 1982, at 6, col 5.)
*735 The failure of petitioner to properly obtain and review the rent history for respondent and to provide a protection provision in the sales contract regarding rent overcharges should not create a burden on respondent, who is a nonparticipating and powerless bystander of the transfer.
A new owner alone is under a legal obligation to obtain the complete rent history and record for all tenants so as to establish the legal rent by calculating the base rents and subsequent increases. (Code of Rent Stabilization Association of New York City, Inc. § 42 [A]; Baumrind v New York City Conciliation & Appeals Bd., NYLJ, Oct. 24, 1984, at 6, col 1; Coronet Props. Co. v State of New York, Div. of Hous. & Community Renewal, NYLJ, Nov. 26, 1986, at 11, col 4; Matter of Endeavor Prop. Holdings v Conciliation & Appeals Bd., 116 Misc 2d 541.)
The failure of an owner to comply with this self-regulating procedure would create a liability on the owner for any rent overcharges. The reliance by a new owner on the amount of rent charged by the prior landlord when a simple review of the rent record shows an overcharge can subject the new owner to damages for rent overcharges including treble damages. (Coronet Props. Co. v State of New York, Div. of Hous. & Community Renewal, supra.)
The court cannot sustain petitioner’s contention that she did everything within her power to protect herself from such an "unexpected contingency”. The facts in this case show that petitioner should have been placed on notice that there was a problem with this tenant regarding his rent.
Schedule A of the sales contract for this property lists all the tenants in the building together with their rent and lease expiration dates. The schedule shows respondent’s lease had already expired on the date of the contract and that his lease was not renewed. All the other tenants had current leases. Petitioner also concedes that she had knowledge that respondent had not paid rent for a period of time before she acquired title.
If petitioner had any doubts as to a rent problem with a tenant, which she should have under the circumstances of this case, it was very simple to provide a protective clause in the sales contract for such a contingency. If the prior owners fraudulently concealed information from petitioner, a plenary action can be brought against them. The liability should not be placed on respondent who is not a party to the transfer and *736 does not know the whereabouts of the prior owners. Petitioner should have been aware of the maxim, caveat emptor, when she purchased the property.
The right of a tenant to offset rent overcharges has been found to even survive a foreclosure sale of the premises where the tenant was not made a party in the foreclosure proceeding. (Krochta v Green, 121 Misc 2d 471.)
If the court was to sustain petitioner’s contention, the result would frustrate the scheme of the Rent Stabilization Law which was enacted in 1969 to regulate lawful rent increases during an emergency shortage of housing accommodation so as to prevent serious threats and perils to the public health, safety and general welfare. (Administrative Code of City of New York § YY51-1.0 et seq.) If an owner can avoid liability for rent overcharges by transferring title and absconding, and this liability is not imputed to the succeeding landlord the enforcement power of the Division of Housing and Community Renewal (D.H.C.R.) to regulate legal rent would be seriously compromised.
Moreover, if a transfer of title can wipe out rent overcharge penalties it may lead to wide abuses when transfers are made to avoid such penalties. (See, Coulston v Singer, supra.) This is more persuasive in light of the amendment of the Rent Stabilization Law by the Omnibus Housing Act of 1983. (L 1983, ch 403.) Administrative Code § YY51-6.0.5 was added to the Rent Stabilization Law which provided for triple damage penalty for willful rent overcharges collected from rent-stabilized tenants after April 1, 1984.
Petitioner cites Matter of Lakeview Props. v New York City Conciliation & Appeals Bd. (124 Misc 2d 156 [Sup Ct, NY County]). In the Lakeview case, the court found the present owner was not liable for rent overcharges collected by its predecessor-in-interest when the prior owner failed to disclose the outcome of a tax certiorari proceeding to the Conciliation and Appeals Board (hereinafter known as CAB) which would have reduced to total amount of rents paid by the tenants pursuant to a hardship order issued by CAB.
The facts in the Lakeview case (supra) are clearly distinguishable from the facts of the case at bar. In the Lakeview case the court found that the new owner could not have known the existence and outcome of a tax certiorari proceeding determined long before the new owner’s acquisition of the property, and the effect it had on a hardship order issued by *737 CAB four years prior to the transfer of title. The court further criticized CAB for failing to provide precautionary measures in its hardship order such as requiring the prior owner to place in escrow a portion of the increases or obtain a bond or undertaking as a condition of the hardship order pending the outcome of the tax certiorari proceeding.
In this case we do not have a tax certiorari proceeding which affected the legal rents for the tenants and which was decided years before the new owner acquired title of the premises.
In this case there was an effective order from the Rent Administrator for rent overcharges at the time petitioner contracted to purchase the property and that the proceeding was still pending before D.H.C.R. at the close of title. A simple search or inquiry by petitioner could have easily disclosed this fact.
The court finds that petitioner is liable to respondent for the rent overcharges as determined by the order of the Rent Administrator in the sum of $6,379.67. The excess security has been adjusted.
A tenant is relegated to collect any rent overcharges as determined by D.H.C.R. by a plenary action and/or as an offset against current rent. (Melohn Found, v Bruck, NYLJ, Nov. 20, 1986, at 11, col 1 [App Term, 1st Dept].)
The parties have stipulated that respondent did not pay rent to petitioner from November 13, 1984 (the date petitioner acquired title) to July 31, 1985 in the total sum of $1,522.06. Respondent has been paying the legal monthly rent to petitioner from August 1, 1985 to present.
Since the rent overcharges collected from respondent exceed the rental demanded by petitioner in this proceeding, the petition is dismissed.