OPINION OF THE COURT
Robert D. Lippmann, J.
In this CPLR article 78 proceeding petitioner seeks to annul as arbitrary and capricious and contrary to law the Division of Housing and Community Renewal’s (DHCR) determination dated October 8, 1998 which ordered petitioner to refund a rent overcharge of $21,600, which sum includes treble damages.
The DHCR proceeding has a long history; it began on June 24, 1985. Dan Brennan occupied the parlor floor apartment No. 2 at 32 East 38 Street in Manhattan under a sublease from Penfield Petroleum Products, Inc. (Penfield) for a three-year term running from September 1, 1982 to August 31, 1985 at a monthly rent of $2,000. On June 24, 1985 Dan Brennan filed a rent overcharge complaint and alleged Penfield’s owner was a friend and client of Paul Sessler, the then owner of the subject building, and that Penfield had never occupied the apartment and was an illusory tenant.
*3 In September 1985 Penfield initiated a holdover proceeding against Brennan in Civil Court where Brennan defended against the eviction proceeding by submitting the Honorable Jaime Rios’ decision dated October 31, 1985 in Sessler v Ross (index No. 47570/85) that held Penfield was an illusory tenant. The holdover proceeding was settled by stipulation dated November 6, 1985 under which terms Brennan agreed to vacate the apartment and did so on March 20, 1986.
Well over a year later, on October 1, 1987, petitioner herein purchased the subject building from Paul Sessler. Petitioner made a title search but did not make any inquiry at the DHCR of pending complaint regarding the subject apartment.
In the meantime, although he had vacated the apartment, Dan Brennan continued through the ensuing years to actively pursue his overcharge claim at the DHCR. Requests by DHCR for information and documentation of rental history issued forth. Repeated requests by Paul Sessler for additional time to respond were made and granted. Time passed.
In 1992 Paul Sessler commenced a declaratory judgment action in Supreme Court for a determination of whether Brennan had used the apartment for business purposes only and whether he had maintained it as his primary residence. Also in that year, on June 29, DHCR first notified petitioner of Brennan’s complaint and requested a complete rental history of the subject apartment as of April 1, 1980. Upon documents submitted by Paul Sessler and his predecessor-in-interest Kenthor/ Roanoke, DHCR determined that the subject apartment had been newly created in December 1967 and had never been rented until September 1982. Accordingly, on January 18, 1995 the Rent Administrator (RA) issued his order, which now indicated Margaret Helfand, petitioner herein, as the “Owner/ Landlord”, in which he stated:
“The Administrator is of the opinion that the initial 1984 apartment registration was improperly filed by the prior owner, in that it lists an illusory/fraudulent tenant rather than the actual April 1, 1984 tenant of record (the complainant). As a result, this proceeding is being treated as a ‘timely challenge’ to the initial legal registered rent in accordance with Section 2526.1 (a)(3) (ii) of the Rent Stabilization Code. Section 2521.1 (b) (1) of the Code states that the DHCR shall determine the initial legal registered rent by taking the rent charged and paid on April 1, 1980 plus lawful increases up to March 31, 1984. In this instance, the rent charged the complainant-tenant on March 31, 1984 was $2,000.00 per month, and that amount *4 is determined to be the initial legal registered rent for the apartment upon which all subsequent increases should be calculated.
“As shown on the attached Rent Calculation Chart, the lawful rent is established at $2,000.00 per month during the course of the complainant-tenant’s occupancy (September 1982 through January 1986) due to the prior owner’s improper filing of the 1984 initial apartment registration. The total overcharge collected is $21,600.00 including treble damages. The current owner is liable for the overcharge collected, pursuant to Section 2526.1(f) (2) of the Code.”
Sessler and petitioner each filed a petition for administrative review (PAR) of the RA’s decision. On October 8, 1998 these PARs were denied. Petitioner herein was held liable for the overcharge collected by the prior owner and for the treble damage penalty. DHCR’s Commissioner explained the rationale for his decision.
“Section 2526.1(f) (2) of the Rent Stabilization Code provides in pertinent part that for overcharge complaints filed or overcharges collected on or after April 1, 1984, a current owner shall be responsible for all overcharge penalties, including penalties based upon overcharges collected by any prior owner.
“The present owner is liable to the tenant for rent overcharge collected by the owner’s predecessor in interest where, as here, there was a proceeding pending before the DHCR * * * and a simple search or inquiry would have disclosed the fact. The owner’s reliance upon her predecessor’s representations, if any, subjects the owner to liability. The current owner should be bound by the errors, whether misfeasance or malfeasance, of its predecessor in interest. A tenant, even one who has vacated the premises, who was not a party to the sale of the subject premises should not suffer the burden of being unable to recover rent overcharges. The current owner also can hardly claim to have been taken by surprise by the Administrator’s order, having been given a thorough chance to respond through notices at least on June 30, 1992 and August 18, 1992. (It appears that her only response was an August 12, 1992 request for an extension of time. The Administrator’s order was not issued until January 18, 1995.)”
In this article 78 proceeding petitioner essentially argues and argues vociferously that DHCR is without statutory authority to impose liability on a current owner for an overcharge collected by the prior owner from a tenant who vacated the subject apartment well before ownership of the building *5 was transferred to petitioner and of whom petitioner therefore had no knowledge and with whom petitioner had no relationship at all. Moreover, petitioner maintains that DHCR’s inordinate delay in rendering a decision is severely prejudicial to her because had the decision been rendered within a reasonable time, such as three years, only the prior owner would have been liable for refunding the overcharge. Petitioner also strenuously opposes the imposition of treble damages as there could be no willfulness demonstrated on her part.
It is a regrettable fact that between the date of the filing of a complaint and the date of DHCR’s determination it is not uncommon for a decade to elapse. In this instance, however, DHCR cannot be held solely to blame for the 13-year delay. Petitioner and petitioner’s predecessor-in-interest not only submitted nonresponsive answers and repeatedly requested additional time to respond, but Penfield and Sessler each initiated judicial proceedings which necessarily stayed DHCR from making a ruling pending the outcome of the litigations which involved issues that went to the very heart of the matter before DHCR. In any event, had the decision been rendered within three years, it would have been dated January 1988, which date is three months after petitioner had taken title to the subject building, such that petitioner would still have been held responsible for the overcharge. It cannot, therefore, be said that the inordinate delay was prejudicial to petitioner.
Petitioner, to support her claim that DHCR’s order is ultra vires, cites Rent Stabilization Law (Administrative Code of City of NY [RSL]) § 26-516. The section provides that before DHCR can issue an order imposing a refund there must first be a complaint either by the tenant or by DHCR against the landlord, and a determination that the landlord has in fact overcharged the tenant. Petitioner uses the statute to argue that here no “complaint” was filed against her, that Dan Brennan was never her tenant since he had vacated the subject premises before petitioner took over ownership of the building and therefore that Brennan had no standing to bring a complaint against petitioner. Petitioner further argues that she could not have been found to have collected an overcharge. Pursuing this line of reasoning, petitioner maintains DHCR, therefore, has no authority under RSL § 26-516 to impose liability upon petitioner for the overcharge refund pursuant to Rent Stabilization Code (9 NYCRR [RSC]) § 2526.1 (f) as the elements set forth in RSL § 26-516 are not met.
It should be noted that DHCR had jurisdiction over Brennan and the then landlord when the complaint was filed. It is by *6 now a well-worn legal adage that under the rent stabilization scheme the new owner steps into the shoes of the prior owner and that a succeeding landlord is bound by the misfeasance of his predecessor in interest. (Simon v Elkon, NYLJ, Apr. 26, 1976, at 6, col 1 [App Term, 1st Dept].) Under this principle, the complaint filed against Sessler remains a valid complaint against the new owner. The single event that precipitated the instant article 78 petition is that the tenant ceased to be in possession when the new owner acquired title to the building. The former tenant, however, did not thereby lose his right to recovery.
Before the enactment of the Omnibus Housing Act (L 1983, ch 403 [OHA]) rent-stabilized housing in New York City was administered by the New York City Conciliation and Appeals Board (CAB), and rent-controlled housing in New York City was administered by the Office of Rent Control. Outside the City, both rent stabilization and rent control were administered by the DHCR. Pursuant to the OHA, DHCR took over the administration of all four systems effective April 1, 1984.
Under CAB the policy had been to hold current and prior owners each liable, in the absence of collusion, for only their own overcharges. On the other hand, under rent control there was no such allocation, the current owner being held liable for the prior owner’s overcharge. This disparate treatment was found to be arbitrary in Coulston v Singer (86 Misc 2d 1001 [App Term, 1st Dept 1976]). When DHCR took up its new responsibility, it standardized its policy by holding new owners liable for all prior rent overcharges occurring after April 1, 1984. This policy was formally adopted in section 2526.1 (f) of the Rent Stabilization Code promulgated in May 1987. The section provides, as relevant here:
“(f) Responsibility for overcharges. (1) For overcharges collected prior to April 1, 1984, an owner will be held responsible only for his or her portion of the overcharges, in the absence of collusion or any relationship between such owner and any prior owners.
“(2) For overcharge complaints filed or overcharges collected on or after April 1, 1984, a current owner shall be responsible for all overcharge penalties, including penalties based upon overcharges collected by any prior owner.”
This regulation is a codification of public policy considerations which has found expression repeatedly in decisional law. For instance in Turner v Spear (134 Misc 2d 733, 736 [Civ Ct, NY County 1987]) Judge Peter Tom held that an apportionment of *7 liability for an overcharge between prior and current owners “would frustrate the scheme of the Rent Stabilization Law which was enacted in 1969 to regulate lawful rent increases during an emergency shortage of housing accommodation so as to prevent serious threats and perils to the public health, safety and general welfare. (Administrative Code of City of New York § YY51-1.0 et seq.) If an owner can avoid liability for rent overcharges by transferring title and absconding, and this liability is not imputed to the succeeding landlord the enforcement power of * * * (D.H.C.R.) to regulate legal rent would be seriously compromised.”
The validity of the new Rent Stabilization Code was challenged in Community Hous. Improvement Program v N. Y. State Div. of Hous. & Community Renewal (NYLJ, Apr. 28, 1993, at 26, col 1 [Sup Ct, Queens County, Golar, J.]). The challenge was rejected in its entirety. As to section 2526.1 (f) (2) specifically, Judge Golar held the regulation waá neither in conflict with the RSL nor ultra vires. He wrote: “The Rent Stabilization Law does not explicitly prohibit a current owner from being liable for overcharges collected by a former owner. Since the challenged regulation clearly is intended to protect tenants by affording them a remedy when a prior owner has left and it only fills in interstices in accordance with the overall regulatory scheme, it must be upheld as a valid exercise of authority. [Citations omitted.] Furthermore, it is not unreasonable to place the burden on a purchasing owner to protect itself by obtaining a review of the rent history for the building or by inserting a protective clause in the sales contract.” (Supra, at 26, col 2.)
Petitioner does not argue that RSC § 2526.1 (f) (2) is not consistent with RSL § 26-516 where the complaining tenant is still in occupancy. Rather, petitioner maintains that the application of RSC § 2526.1 (f) (2) is ultra vires where, as here, the complaining tenant has vacated before the premises changed ownership, so that the new owner had no landlord/tenant relationship with the departed tenant, never collected any rent from him and had no knowledge of the tenant’s existence. In further support of her argument, petitioner cites 52 Riverside Realty Co. v Ebenhart (119 AD2d 452, 453 [1st Dept 1986]) wherein the Court stated “the transferee of real property takes the premises subject to the conditions as to tenancy * * * that his predecessor has established if the transferee has notice of the existence of the leasehold” (petitioner’s emphasis). Relying on this holding, petitioner maintains she has no liability since *8 she had no notice of the Brennan tenancy and no reason to be aware of it.
There is undoubtedly some merit to petitioner’s position but public policy considerations do not support the result she seeks. Courts have repeatedly acknowledged the inequity of requiring a tenant prevailing upon an overcharge to recover from a prior landlord (Polanco v Higgins, 175 AD2d 729 [1st Dept 1991]), and have held that a tenant who has filed an overcharge complaint and “who was not a party to the sale of the subject premises should not suffer the burden of being unable to recover rent overcharges.” (380 Third Ave. Assocs. v DHCR, Sup Ct, NY County, Aug. 29, 1991, Ciparik, J., index No. 31076/92.) This is because “If the prior owners fraudulently concealed information from petitioner, a plenary action can be brought against them. The liability should not be placed on respondent [i.e., the tenant] who is not a party to the transfer and does not know the whereabouts of the prior owners.” (Turner v Spear, supra, at 735-736.) “[A] succeeding landlord is bound by the misfeasance of his predecessor-in-interest.” (Turner v Spear, supra, at 734.)
Admittedly, the cases from which these holdings derive dealt with tenants in possession, but the public policy these holdings reflect are equally applicable, and for the same reasons, to a tenant who has vacated. To hold otherwise would mean that a tenant would be deprived of recouping his outlay in rent overcharges and be left without redress although he has in fact prevailed at the DHCR. The pendency of a proceeding at DHCR is often so protracted that it is not uncommon during the time elapsing between the filing of a complaint and DHCR’s determination thereon for the ownership of property and the tenancy of apartments to change. The prevailing tenant neither has control over the DHCR’s decision-making process nor over the transfer of ownership, nor can he be held captive in the same apartment awaiting indefinitely the outcome of his claims, lest he lose his right of recovery. As between the former tenant and the new owner, it is the new owner who is in the best position to protect his interest. This the new owner can do by making inquiries at the DHCR at the time of purchase as well as by safeguarding through contractual provisions against exposure to any liability incurred by the prior owner. Moreover, the new owner can seek redress against his predecessor-in-interest in a plenary action. Indeed, the DHCR order at issue specifically states that it is “without prejudice to any right the current owner may have against the prior owner in a court of competent jurisdiction.”
*9 Finally, petitioner claims DHCR failed to be consistent with its own policy and was therefore arbitrary and capricious in the instant case. To support this allegation, petitioner cites Matter of Kingwood Mgt. Corp. (docket No. 1101 84 RO, Feb. 28, 1997) in which the DHCR found that “inasmuch as the petitioner owner never collected any rent from the tenant, the petitioner-owner should not be held liable for any excess rent paid by the tenant.” The Commissioner specifically relied on policy statement 93-1 for his decision. Kingwood did not, as here, involve a rent overcharge complaint but a fair market rental determination. Policy statement 93-1 is applicable only to fair market rent appeals and exempts current owners from liability for excess rent collected by a prior owner where the new owner was not given an opportunity to be heard before the RA. Notwithstanding petitioner’s assertion, Kingwood is therefore consistent with DHCR’s «policy to be more liberal in fair market rent appeals than in overcharge cases.
Upon a judicial review of a determination rendered by an administrative body after a hearing, the issue presented for the reviewing court’s consideration is limited to whether the determination was in violation of lawful procedure, was affected by an error of law, or was arbitrary or capricious, or an abuse of discretion. (CPLR 7803 [3].) What is reviewed under this standard is the rationality of the agency’s determination. Only if the record, as a whole, reveals the agency’s determination has no rational basis, may a court overturn that determination. (Matter of Pell v Board of Educ., 34 NY2d 222 [1974].)
The court is being asked whether DHCR acted reasonably and in accordance with the RSL in imposing the refund on the new owner. The answer is yes.
TREBLE DAMAGES
RSL § 26-516 provides a penalty of treble damages on willful overcharges. The statute raises the presumption that all overcharges are willful unless “the owner establishes by a preponderance of evidence that the overcharge was not willful,” in which case the penalty is the amount of the overcharge plus interest.
The prior owner Paul Sessler failed to overcome the presumption. Willfulness is an individual attribute and, like intent, it cannot be imputed on the blameless. Petitioner played no part in establishing an illusory tenancy with Penfield and had no knowledge of it. Petitioner is charged with failing to apprize herself of the pending DHCR proceeding filed by Brennan, but *10 this omission does not constitute a willful overcharge. Moreover, even if petitioner had checked the DHCR records, this act in itself would not have wiped clean the prior owner’s willfulness and DHCR does not indicate whether or how petitioner would have been exonerated of the imputed willfulness by virtue of checking DHCR’s records. RSL § 26-516 is punitive in nature and does not impose the penalty of treble damages upon a new owner merely for failure to seek notice of a pending proceeding, especially one involving a tenant not on the rent roll at the time ownership was transferred. As discussed extensively above, it is proper that an overcharged tenant, even one who has vacated, should be made whole by a refund in an amount equivalent to the overcharge, plus interest, and that this be paid by the new owner. It is unwarranted, however, to require the new owner, against whom no willful overcharge can be found, to bestow a windfall upon the former tenant. RSL does not require it and should not be interpreted so broadly as to bring a blameless successor-in-interest within its punitive scope.
Accordingly, this part of the petition is granted.
In summary, the article 78 petition is in part granted, in part denied.