OPINION OF THE COURT
Jeffrey M. Atlas, J.
Petitioner seeks to overturn a decision by respondent Divi *180 sion of Housing and Community Renewal (DHCR) holding petitioner responsible for rent overcharges paid by a tenant to the owner of the building from whom petitioner privately purchased its interest. While challenging the decision on other grounds, petitioner places primary emphasis on its claim that the imposition of treble damages against it was unlawful. In particular, petitioner contends that since all rental overcharges were collected and retained only by its predecessor in interest, petitioner could not have acted wilfully and therefore should not be made to pay the treble damage penalty imposed by respondent. In support of its position petitioner relies upon the decision of the Appellate Term of the Supreme Court, Second Department, in Heights Assocs. v Bautista (178 Misc 2d 669 [1998]), which for the reasons set forth herein, I respectfully decline to follow.
On or about September 1, 1988 tenants Walker and Wells took occupancy of rent-stabilized apartment 2E at 500 West End Avenue in New York City, at the stated rent of $1,318.66. By the time they vacated the apartment on June 1, 1991 they were paying a rent of $1,481.61. At that time the building was still owned by the previous owner. On or about August 30, 1991, the tenants filed a complaint with respondent alleging that they had been overcharged rent from the time they moved into the premises. Evidence ultimately taken by respondent shows that the previous tenant’s rent was $349.30 and that given certain repairs to the apartment, the appropriate rent under existing guidelines should have been $526.46.
Soon after the tenant’s complaint was filed, respondent notified the previous owner affording it time to answer the charge. There followed an extended period during which the previous owner sought extensions to review documentation regarding the improvements it claimed to have made to the apartment. However, no answer to the complaint was filed by the previous owner. Instead, on October 13, 1994, the petitioner advised the respondent that it had purchased the building from the previous owner on April 6, 1994, and sought the opportunity to respond to the complaint. I note that the contract of sale expressly referred to the fact that this overcharge complaint (amongst others) was filed against the previous owner who agreed to indemnify the petitioner for charges arising from that complaint “including treble damages to the date of payment less actual overcharges collected” by the petitioner. After the fall of 1994 there was little activity in the matter as it *181 waited its turn behind the extraordinary number of complaints received by DHCR and handled by it in accordance with its first-in, first-out policy.
In March of 1996, respondent obtained additional material it had requested from the tenants and forwarded that to the petitioner and to the previous owner. After extensions sought by petitioner and the previous owner, in February of 1997 petitioner responded to the complaint asserting that it could not be assessed for overcharges or treble damages incurred by the behavior of its predecessor. The previous owner sought and received numerous extensions to respond for the explicit purpose of pulling together proof of the improvements. In June 1997, the previous owner was denied any further extensions. In August 1997, respondent requested additional information from the previous owner concerning the lease history of the apartment, and when it received no response, it advised the petitioner of that fact. Petitioner then sought and received at least two additional extensions of time to respond. In February 1998, when no response was served by petitioner, respondent served both petitioner and its predecessor with “final notice” of the fact that treble damages would be imposed on the overcharge in view of the fact that neither owner had provided any evidence as to how the base rent had been increased to the amount paid by the tenants. When petitioner failed to respond to this notice within the 21 days provided, another “final notice” was served granting petitioner and the previous owner an additional seven days to respond. Both sought but were denied a further extension of time to respond and finally, on March 24, 1998, petitioner responded. First, petitioner complained that respondent had acted arbitrarily by granting only seven days to respond to the second final notice in a proceeding that had been pending for seven years without action (this notwithstanding petitioner’s substantial contribution to the delay and the fact that petitioner had already had four years within which to respond to the substance of the complaint). Next, petitioner claimed that the indemnification agreement that was part of its purchase agreement required that treble damages be imposed only against the prior owner. Finally, petitioner contended that its own lack of wilfulness prevented the imposition of treble damages against it. On March 27, 1998 the Rent Administrator to whom the matter was assigned issued an order finding a rent overcharge and imposing treble damages against the petitioner. On April 29, 1998 the petitioner sought administrative review and asserted once again *182 only the grounds raised by its March 24th response. In October 1999, the petition for review was denied. Thereafter, the petitioner filed this CPLR article 78 petition.
Enforcement of the rent stabilization laws of the Division of Housing and Community Renewal is governed by Rent Stabilization Code (9 NYCRR) part 2526. The pertinent portion of section 2526.1 (a) (1) states: “Any owner who is found by the DHCR, after a reasonable opportunity to. be heard, to have collected any rent or other consideration in excess of the legal regulated rent shall be ordered to pay to the tenant a penalty equal to three times the amount of such excess, except as provided under subdivision (f) of this section.”
Section 2526.1 (f) states:
“Responsibility for overcharges.
“(1) For overcharges collected prior to April 1, 1984, an owner will be held responsible only for his or her portion of the overcharges, in the absence of collusion or any relationship between such owner and any prior owners.
“(2) For overcharge complaints filed or overcharges collected on or after April 1, 1984, a current owner shall be responsible for all overcharge penalties, including penalties based upon overcharges collected by any prior owner.”*
In its claim petitioner relies upon Heights Assocs. v Bautista (178 Misc 2d 669, supra), in which the Supreme Court, Appellate Term, Second Department, declined to uphold the award of treble damages to a tenant who had counterclaimed for rent overcharges in an action brought against the tenant for nonpayment of rent. In that action the court agreed with the appellant landlord’s claim that, as successor to the original owner who had overcharged the tenant, he could not be considered as having been the wrongdoer nor as having acted wilfully, and should not therefore be subject to punitive damages. The court held that there was no sufficient predicate for the imposition of liability for treble damages upon the subsequent owner and, when considering the Rent Stabilization Code’s extension of liability for such damages to current owners, found it to be “out of harmony with the statute that it is designed to implement and with established principles of law” (at 673). The court declined to apply the provision (supra, at 673).
*183 With all due respect for that court, I must disagree. I begin by pointing out Heights Assocs.’ reliance upon Matter of Gaines v New York State Div. of Hous. & Community Renewal (90 NY2d 545 [1997]) and Turner v Spear (134 Misc 2d 733 [Civ Ct, NY County 1987] [cited with approval by Gaines]), and its acknowledgment that carry-over liability for rent overcharges is, in the first instance, a product of judicial decisions. As Heights Assocs. (supra) noted, “The rationale underlying the extension of liability to subsequent purchasers is said to be that a purchasing owner has the opportunity to review the building’s relevant rent history and to provide for protection in the sales contract against liability for rent overcharges. In addition, the imposition of liability upon subsequent owners provides tenants with a simplified procedure for recovering overcharges (cf., Coulston v Singer, 86 Misc 2d 1001, 1003).” (Heights Assocs. v Bautista, supra, at 672.) What Heights Assocs. failed to note is that Turner v Spear (supra) held that treble damages may be passed along to the subsequent purchaser along with the overcharges collected by the previous owner. Turner relied upon the earlier decision Coronet Props. Co. v State of N. Y., Div. of Hous. & Community Renewal (NYLJ, Nov. 26, 1986, at 11, col 4), which also upheld the right of the DHCR to impose treble damages against the subsequent owner under the provisions of the Rent Stabilization Law. Moreover, these cases make clear that the regulation’s extension of such liability to the subsequent owner, rather than being out of harmony with the Rent Stabilization Code, is actually supportive of its purposes. “If an owner can avoid liability for rent overcharges by transferring title and absconding, and this liability is not imputed to the succeeding landlord the enforcement power of [DHCR] to regulate legal rent would be seriously compromised.” (Turner v Spear, supra, at 736.) As for the Heights Assocs. court’s criticism that punitive damages are awarded as punishment of the offender and as a warning to others, and therefore can only be awarded against one who has participated in the offense, I note that the regulation does not really violate that principle. In fact, in situations such as the case before me, the punitive damages are actually being awarded against the previous owner who committed the offense to punish that owner’s conduct (see, 9 NYCRR 2526.1 [a] [1]; [f] [2]). The current owner is being made to pay those damages, not because of his or her participation in the event or wilfulness, but as Turner points out, to avoid abuses when transfers of the property are made to avoid the payment of *184 such penalties. In fact, passing along the damages incurred by the previous owner is not at all inequitable since the “successor landlord would always be able to ascertain [at the time of the purchase of the property] whether the previous owners had been guilty of overcharges and protect itself accordingly” (Matter of Gaines v New York State Div. of Hous. & Community Renewal, supra, at 549; see also, Heights Assocs. v Bautista, supra, at 672). It follows that the respondent’s decision here is based on a perfectly rational interpretation given to its own regulation. That interpretation is entitled to deference (Matter of Gaines v New York State Div. of Hous. & Community Renewal, supra, at 549; Matter of Salvati v Eimicke, 72 NY2d 784 [1988]).
The present case is, perhaps, a perfect example of the need for such a provision. The record made before the DHCR and reviewed by me makes clear the lengths to which the previous owner sought to avoid responsibility for the overcharges in this case. Despite many opportunities made available to it to respond to this claim and explain the overcharges, the previous owner simply sought adjournment after adjournment. Ultimately, that owner sold the property and the new owner, the petitioner, and the old, in tandem, sought additional adjournments of their respective responses. When petitioner finally did respond it was not a substantive response, but instead it simply protested the respondent’s attempts to act. It is clear from the record that petitioner was able to have obtained the relevant rent records to defend against this claim, assuming they ever existed, and in addition, it had in its favor a protective indemnification provision in the sales contract regarding rent overcharges and treble damages. Now, remarkably, instead of paying the claim and enforcing its own claim against the previous owner under its contract of sale, the petitioner seeks to avoid responsibility altogether arguing amongst other things that the existence of the indemnification clause prevents the granting of this award. There is simply no logic to that position and it is utterly without merit. In addition, petitioner seeks to avoid this claim because it has taken so long for DHCR to have reached its decision. This position also lacks any merit because the delay was contributed to substantially by the previous owner and by petitioner itself, and clearly resulted in no prejudice to the petitioner. Finally, petitioner asks that the award be set aside because it sees the respondent as having improperly computed the overcharges. This is an argument which petitioner never raised or litigated before the respondent at any level, and it therefore lacks merit here.
*185 In short, petitioner has failed to demonstrate that the respondent acted in any way in an unreasonable, arbitrary, capricious or unlawful manner. Plainly, petitioner’s arguments are without merit, and respondent’s decision is rational and well supported by the record made before it.
The petition is dismissed.

 Additional .provisions found within the section provide for exemption from treble damages under certain circumstances for a current owner who has purchased the property at judicial sale.