■ In the Matter of JOHN KLEIN, Petitioner, v NEIL D. LEVIN, as Superintendent of Insurance of the State of New York, Respondent. [760 NYS2d 462] —Determination of the Superintendent of Insurance, dated April 3, 2001, denying petitioner a license as a public adjuster, unanimously annulled, without costs, and the petition in this CPLR article 78 proceeding, which was transferred to this Court pursuant to CPLR 7803 (4) and 7804 (g) by order of the Supreme Court, New York County (Eileen Bransten, J.), entered May 24, 2002, granted, and the matter remanded to respondent for further proceedings not inconsistent with the decision herein.

Petitioner was licensed as a public adjuster in June 1975. A public adjuster represents an insured who has made a claim against an insurance company; the adjuster is paid a percentage of the insured's recovery. In the late 1980s and early 1990s, petitioner was caught up in bribery scandals that were plaguing the insurance industry. Some insurance company adjusters demanded bribes from public adjusters in return for processing their clients' claims. Those public adjusters who did not pay the bribes found that their clients' claims would languish in a backlog of unprocessed cases or that unacceptably low settlements would be offered, forcing the insured into expensive litigation. Instead of reporting the unscrupulous insurance company adjusters, petitioner acquiesced in at least three bribery demands and, between 1991 and 1993, deliberately inflated the claims, building in the cost of the bribe.

Federal investigations into suspected insurance fraud prompted petitioner to voluntarily come forward in 1994 with an offer to cooperate in the investigations. In 1996, pursuant to a cooperation agreement, petitioner pleaded guilty to three counts of fraud and was sentenced to three years probation, including two months of home detention, fined $3,000, and ordered to pay $46,342 in restitution to the three insurance companies that he had defrauded.

Despite his conviction, petitioner's public adjuster license was renewed in 1997. However, the Superintendent required petitioner to surrender his license in February 1998. On February 10, 1998, the New York State Parole Board granted petitioner a certificate of relief from disabilities. On January 7, 2000, the Division of Parole, in recognition of his having paid his fine and restitution and having fully served his sentence and successfully completed his probation, granted petitioner a certificate of good conduct, which specifically provided that "the bar to the public office of Public Adjuster under Insurance Law Section 2108d (3) is hereby removed."

Following receipt of the certificate of good conduct, petitioner applied for a new public adjuster license. His application was initially denied based upon his conviction. Petitioner requested and was granted a hearing, as was his right under New York Insurance Law. Following a full day's evidentiary hearing, the Hearing Officer concluded that any statutory bar to petitioner's licensure caused by his conviction had been removed by his certificate of good conduct (*see* Insurance Law § 2108 [d] [3], [4]) and that, based upon the factors set forth in Correction Law § 753 (1),* which govern an agency's discretionary grant or denial of a license, there was no basis to deny petitioner's application for a license as a public adjuster. He therefore recommended that petitioner's application be granted.

Respondent specifically accepted the Hearing Officer's finding of fact but rejected his recommendation. In the Department's final determination, respondent's stated reasons for rejecting the Hearing Officer's recommendation were that "[petitioner] was a mature individual at the time of his criminal conduct, and had been in the insurance industry for many years. His crimes were serious in nature as [he] participated in a major conspiracy to corrupt the insurance industry. Even though nearly ten years ha[ve] elapsed since he committed the acts for which he was convicted, the offenses occurred over an extended period of time and are directly related to the license sought."

Respondent also rejected petitioner's contention that approval of his application was compelled by the Insurance Department's 1999 decision in *Matter of Harold Greenblatt*, a case in which the application for a public adjuster's license was granted upon virtually identical facts. Respondent's stated rationale was only that "each application presents different facts and circumstances, hence, that matter is not binding herein."

The decision of an administrative agency to deny a license "cannot be disturbed unless it is arbitrary and capricious." (*Matter of Arrocha v Board of Educ.*, 93 NY2d 361, 363 [1999].) However, "[a] decision of an administrative agency which nei-

---

* These factors include: New York's policy "to encourage the licensure and employment of persons previously convicted of one or more criminal offenses"; the duties and responsibilities related to the license or employment sought; the bearing, if any, that the criminal offense for which the applicant was convicted will have on the applicant's fitness or ability to perform the requisite duties; the time that has elapsed since the commission of the criminal offense; the age of the applicant at the time the offense was committed; the seriousness of the offense; and any information related to the applicant's rehabilitation and good conduct (Correction Law § 753 [1]).

ther adheres to its own prior precedent nor indicates its reason for reaching a different result on essentially the same facts is arbitrary and capricious" (*Matter of Charles A. Field Delivery Serv. [Roberts]*, 66 NY2d 516, 517 [1985]).

The policy considerations for reaching consistent results on virtually identical facts are "largely the same whether the proceeding be administrative or judicial—to provide guidance for those governed by the determination made * * *; to deal impartially with litigants; promote stability in the law; allow for efficient use of the adjudicatory process; and to maintain the appearance of justice" (*Field Delivery Serv.*, 66 NY2d at 519 [citations omitted]). And, while administrative agencies, like courts, are free to correct prior erroneous interpretations of law or to depart from previously stated policies, they must state their reasons for doing so (*id.*). "Absent such an explanation, failure to conform to agency precedent will * * * require reversal on the law as arbitrary, even though there is in the record substantial evidence to support the determination made" (*id.* at 520).

Petitioner contends that respondent's denial of his application should be annulled as arbitrary and capricious under the *Field Delivery Service* rule because it failed to follow the Insurance Department's precedent in *Matter of Harold Greenblatt*. A comparison of the facts of petitioner's case with those underlying the *Greenblatt* decision reveals that the two cases are virtually indistinguishable and that, if anything, the slight factual differences that do exist make petitioner's case the more compelling for granting his license application.

For example, the record reflects that Greenblatt had been a licensed public adjuster for 22 years; petitioner for 20. Greenblatt pleaded guilty to four counts of fraud, while petitioner pleaded guilty to three. The offenses for which both Greenblatt and petitioner were convicted were identical and equally related to the license both men sought. Greenblatt and petitioner both cooperated with law enforcement agencies, although petitioner came forward voluntarily, while Greenblatt began cooperating only after warrants were served on his office and his files were seized. Greenblatt received a more stringent sentence than did petitioner, including a three-month incarceration and a higher restitution amount, which was likely reflective of the fact that he pleaded guilty to one additional count of fraud. While Greenblatt and petitioner both received certificates of relief from disabilities from the Parole Board, petitioner, but not Greenblatt, also received a certificate of good conduct, which creates a statutory presumption of re-

habilitation (Correction Law § 753 [2]). Eight to ten years had elapsed between Greenblatt's criminal conduct and his application; seven to nine years had elapsed between petitioner's crimes and his application. While both Greenblatt and petitioner had, at the time of their applications, paid all fines and restitution, only petitioner had successfully completed his probation.

The reasons stated in respondent's final determination for denying petitioner's application were equally applicable to the Greenblatt application, yet Greenblatt's application was granted while petitioner's was denied. It is hard to imagine two cases that are more similar or which require similar treatment. Respondent's simple assertion that the *Greenblatt* decision is not binding because "each application presents different facts and circumstances" does not constitute an adequate explanation for the different results in the two cases.

In an attempt to distinguish the two cases in this Court, respondent argues here that three purported differences between petitioner's and Greenblatt's cases justify the differing results. As an initial matter, none of these asserted differences were mentioned, let alone relied upon, in respondent's final determination and cannot serve to satisfy the requirements of *Field Delivery* (*see e.g. Matter of Lafayette Stor. & Moving Corp.*, 77 NY2d 823, 826 [1991]; *Matter of Martin*, 70 NY2d 679, 681 [1987]).

In addition to being untimely, respondent's asserted after-the-fact distinctions are not convincing. First, respondent asserts that Greenblatt was still on probation when his license was issued, while petitioner had completed his probation when he submitted his relicensing application. The fact that petitioner had successfully completed his probation—and received a certificate of good conduct for having done so—is hardly a difference that supports harsher treatment for petitioner. Respondent's contention that Greenblatt would be less likely than petitioner to engage in wrongdoing because Greenblatt was still on probation when his application was granted while petitioner had completed his probation is untenable. Moreover whatever merit such rationale might conceivably have would be short lived since Greenblatt's probation was due to be completed within little more than one year after his application was granted.

Second, respondent's assertion that petitioner's probation officer expressed concern about him becoming relicensed while Greenblatt's probation officer expressed no such concern about him is somewhat disingenuous. The "concern" expressed by

petitioner's probation officer was contained in a letter written more than two years before petitioner completed his probation and submitted his application. In addition, the record shows that, unlike the investigator assigned to petitioner's case, the Insurance Department investigator in Greenblatt's case did not ask Greenblatt's probation officer for her views as to whether he was worthy of relicensing, and the probation officer's letter thus did not say one way or the other whether he should be relicensed.

Third, respondent asserts that petitioner, unlike Greenblatt, conceded that he had been involved in other fraudulent claims besides those to which he had pleaded guilty. However, the testimony of Greenblatt and petitioner at their respective hearings is remarkably similar, both stating that "a minimal amount" of the claims they had handled during their public adjuster careers were fraudulent. Based upon Greenblatt's testimony, it cannot be concluded with certainty that the four counts of fraud with which he was charged constituted his only instances of fraud, making this asserted distinction ephemeral at best.

Because the petitioner's application presented essentially identical facts as those underlying the Insurance Department's prior decision in *Matter of Greenblatt* (with the minor differences arguing in petitioner's favor) and respondent failed to provide an adequate explanation for the different treatment afforded petitioner, the decision denying petitioner's application for a public adjuster's license must be annulled as arbitrary and capricious under the *Field Delivery Service* rule.

Respondent's final suggestion that *Field Delivery Service* is inapplicable to agency determinations regarding determinations of a particular person's fitness for a particular license is unsupported by precedent or reason, and we decline to adopt such a rule. Concur—Buckley, P.J., Nardelli, Andrias, Rosenberger and Friedman, JJ.