■ In the Matter of Buffalo Civic Auto Ramps, Inc., Petitioner, v Gregory V. Serio, as Superintendent of Insurance, et al., Respondents. [800 NYS2d 686]—

Determination of respondent Superintendent, dated January 29, 2003, which upheld reclassification of petitioner's cashiers, for workers' compensation purposes, from clerical "office employees" to a category covering "automobile parking lot and drivers" (challenged in this proceeding, transferred to this Court by order of Supreme Court, New York County [Lewis Bart Stone, J.], entered November 7, 2003), vacated and annulled, on the law, without costs, and the matter remanded to New York Compensation Insurance Rating Board for further proceedings consistent with this decision.

This CPLR article 78 proceeding was commenced to review the reclassification of the petitioner Buffalo Civic Auto Ramps, Inc.'s (BCAR) parking ramp cashiers from New York Workers' Compensation and Employers Liability Insurance Manual Standard Exceptions Classification Code 8810 (Code 8810) to Automobile Parking Lot Drivers Classification Code 8392 (Code 8392). Because we find the determination lacking in substantial evidence, as well as arbitrary and capricious, the determination is vacated.

In the early to mid 1990s, BCAR's cashiers were classified as clerical workers under Code 8810. After an audit in July 2000, the cashiers were removed from this classification by the State Insurance Fund. Petitioner initially challenged the classification by the New York Compensation Insurance Rating Board (NYCIRB). After NYCIRB determined that the classification was appropriate, the petitioner subsequently appealed the decision to the Superintendent of Insurance, pursuant to Insurance Law § 2319 (c) (2).

At the hearing, petitioner testified that BCAR runs a parking garage with cashiers that work in self-contained booths. The responsibilities of the BCAR cashiers include collecting parking

fees. They do not conduct business outside of the booths, however, they do have to cross car ramps to begin and end their shift, as well as to take personal breaks. The booths are located inside the ramp near the exit to the parking lot. Each booth is built on a concrete slab about eight inches high and protected by bollards (concrete filled pipes and guard rails), to protect the occupants should a vehicle contact the booth. There have been no incidents of vehicular contact with any of the booths or accidents involving these cashiers.

At the close of the hearing, the hearing officer issued a written report concluding that the new classification for the petitioner's cashiers was not arbitrary, capricious or an abuse of discretion. The Superintendent agreed and, on January 29, 2003, issued a final determination approving and adopting the hearing officer's findings. This proceeding ensued.

In a decision and order dated October 22, 2003, the court properly transferred the petition to this Court pursuant to CPLR 7804 (g). Petitioner now contends that this case was improperly transferred as the issue presented did not mandate a hearing pursuant to CPLR 7803 (4). The petitioner further contends that the reclassification of its cashiers was not supported by substantial evidence, was contrary to the history and language of the manual utilized by respondent for classification purposes,* was arbitrary and capricious, and constituted an abuse of discretion as similarly situated cashiers are afforded the desired classification.

It is well established that judicial review of quasi-judicial determinations of administrative tribunals is governed by the "substantial evidence" rule. Therefore, the court must analyze whether on the record as a whole there was substantial evidence supporting the administrative determination (*300 Gramatan Ave. Assoc. v State Div. of Human Rights*, 45 NY2d 176, 181 [1978]). When the evidence is so substantial that an inference of the existence of the fact found may be drawn reasonably from it then the finding should be found to be supported by the evidence (*id*. at 179). If others might reasonably reach the same result the determination should be sustained. The court, however, in its review should not substitute its own judgment for that of the administrative tribunal (*id*. at 180-181). The decision of whether the administrative determination is correct is not for the court to decide so long as the determina-

---

* The NYCIRB's vice-president of the classification division stated that the Workers' Compensation and Employers Liability Insurance Manual serves as the underlying guide for the NYCIRB in determining appropriate classifications for workers' compensation purposes.

tion is rational (*Matter of Borenstein v New York City Employees' Retirement Sys.*, 88 NY2d 756, 761 [1996]).

The Superintendent based his determination that the petitioner's cashiers should be classified, for workers' compensation purposes, as automobile drivers rather than clerical office employees on the grounds that petitioner's cashiers are not similar to pari-mutuel clerks of a race track or bus terminal cashiers who have received the desired Code 8810 classification, because the BCAR cashiers are exposed to "an operative hazard of the business." In support of his determination, the Superintendent found that because the cashiers have to cross a car ramp in order to get to and from their workstation booths, they are exposed to an operative hazard. Additionally, the Superintendent stated that he does not believe that the concrete bollards which surround the booths provide absolute protection from the risks of a vehicle damaging a booth and thus possibly injuring a cashier. He concluded that pari-mutuel clerks and bus ticket sellers are more physically separate from the operative hazards of a race track or a bus terminal than are petitioner's cashiers.

The Superintendent's determination of the classification is not supported by substantial evidence. There is no evidence of record that the petitioner's cashiers have a greater exposure to an operative hazard of the business than pari-mutuel clerks of a race track or sellers of bus tickets in a bus terminal. The Superintendent does not introduce any evidence demonstrating that the cashiers at this parking garage have ever been exposed to any danger from a vehicle crossing the ramp. Indeed, there is no record of any accident having injured any cashier at this or any other similarly situated garage in 40 years. Additionally, the Superintendent fails to support his statement that the bollards do not provide the necessary protection. There simply is no basis for his determination that the petitioner's cashiers are exposed to danger any more than other cashiers who have been classified under the clerical office employees categorization.

Furthermore, the Superintendent's determination is arbitrary and capricious. Significantly, the NYCIRB classified New York Port Authority bus terminal cashiers and pari-mutuel cashiers under Code 8810. The espoused reasoning is that these cashiers are employed in "union type" terminals in which they perform clerical duties only, and that the terminals are "invariably physically separated" from the hazards of the respective operations. This has been distinguished from the traditional bus terminal where the cashiers assist in other duties such as handling baggage and supervision of buses. The inference is that the latter duties expose the cashiers to an operative hazard of the business.

Similarly, the pari-mutuel clerks at a race track were afforded a rating under classification Code 8810. The rationale behind the classification was that these clerks were comparable to bank cashiers, as they were physically separated from the race track operation.

There is, however, no appreciable distinction between BCAR's cashiers and those of the New York Port Authority bus terminal or the pari-mutuel clerks of a race track. BCAR's cashiers are enclosed in booths separate from the daily operations of the automobile parking garage.

Where two cases are so similar as to require the same treatment, to treat them differently would be evidence that the determination should be considered arbitrary and capricious (*see Matter of Klein v Levin*, 305 AD2d 316 [2003], *lv denied* 100 NY2d 514 [2003]). Similar to the bus terminal cashiers, BCAR's cashiers only perform clerical duties and do not leave the booths except to get to and from their booth stations. Furthermore, similar to the pari-mutuel clerks, the BCAR cashiers operate in a manner approximating bank cashiers. BCAR's cashiers do nothing more than collect money and return change to customers. Therefore, to treat them differently from cashiers classified under the desired Code 8810 without any evidence of a distinction is arbitrary and capricious. Concur—Mazzarelli, J.P., Ellerin, Gonzalez and Catterson, JJ.

Marlow, J., dissents in a memorandum as follows: I dissent.

Our task in reviewing an administrative determination is not to decide whether it conforms to our relative opinion of the facts and interpretation of the applicable regulations. Rather, we have the limited function of determining whether the outcome is rational and based on substantial evidence in the record (*see Matter of Stork Rest. v Boland*, 282 NY 256, 267 [1940]).

Petitioner's cashiers were regularly or frequently exposed to an operative hazard of the business, i.e., their immediate surroundings in booths at the entrance/exit of a commercial parking garage, involving moving automobiles and other vehicles all day long, rendering them vulnerable to risk in varying degrees both while in and out of their booths. That no employee has been injured, while in the booth or while walking across sometimes grease-laden traffic lanes, does not render their situation similar to other clerks who are situated in bus terminals and pari-mutuel settings in areas where moving motor vehicles are remote from their work site. While some, as the majority herein, may view this difference as insufficient to support the Superintendent's determination, I would nevertheless confirm.

Instead, I would hold that the frequent exposure to risks born of an employee's proximity to moving vehicles and the risk of exposure to armed robbery of cash receipts provide a rational basis for the instant classification, a subject well within the Superintendent's expertise (*see Matter of Gaines v New York State Div. of Hous. & Community Renewal,* 90 NY2d 545, 548-549 [1997]), and a determination supported by substantial evidence in the record (*see* CPLR 7803 [4]).