OPINION OF THE COURT
 

 Levine, J.
 

 Petitioner Germaine Gaines commenced this CPLR article 78 proceeding to challenge respondent New York State Division of Housing and Community Renewal’s (DHCR) determination that the current landlord of her New York City rent-stabilized apartment was not liable for rent overcharges exacted by Cornelia Associates (Cornelia), a previous owner of the building.
 

 Carryover liability for rent overcharges by predecessor landlords is authorized by a provision in the Rent Stabilization Code directing that, "[flor overcharge complaints filed or overcharges collected on or after April 1, 1984, a current owner shall be responsible for all overcharge penalties,
 
 including penalties based upon overcharges collected by any prior
 
 owner” (9 NYCRR 2526.1 [f] [2] [emphasis supplied]). The same provision, however, exempts from carryover liability "a current owner who purchases upon [a] judicial sale”
 
 (id.).
 
 DHCR extended that exemption in this case to the present landlord who was a successor to the purchaser at a judicially ordered sale of the subject property.
 

 Here, petitioner, the tenant of a rent-stabilized apartment located at 279 East Houston Street in Manhattan, filed a rent overcharge complaint with DHCR in 1991. At that time, petitioner’s apartment building was owned by Cornelia, a debtor in possession in chapter 11 bankruptcy proceedings
 
 (see,
 
 
 *548
 
 11 USC §§ 1101-1146). In July 1992, while the rent overcharge matter was still pending before DHCR, the Bankruptcy Court of the Southern District of New York issued an order authorizing and approving a compromise and settlement agreement between Cornelia and Home Savings Bank of America, F.A. (Home Savings), the holder of the mortgage on the property, whereby the property was to be sold to Home Savings free and clear of junior liens and encumbrances. The property was transferred to Home Savings pursuant to that order. In June 1993, the property was sold to the current owner, ACB Realty Corporation (also known as Sassouni Management, Inc.).
 

 Thereafter, DHCR’s Rent Administrator determined that petitioner had been overcharged by Cornelia, the debtor in possession, and by the foreclosing creditor, Home Savings. DHCR assessed liability against Cornelia in the amount of $12,147.84, inclusive of treble damages, and against Home Savings in the amount of $1,466.17, noting its purchase at a judicial sale. The Rent Administrator also determined that ACB Realty Corporation, as the current owner, was liable only for the refund of an excess security deposit, incurring no liability to petitioner for rent overcharges collected by the previous owners because of the intervening judicial sale.
 

 On administrative review, the Commissioner of DHCR sustained the Rent Administrator’s determination, rejecting petitioner’s argument that the current owner should be liable for the entire overcharge because it was not the purchaser at the judicial sale of the property, but a successor purchaser. The Commissioner ruled that the judicial sale exemption in 9 NYCRR 2526.1 (f) (2) applies to a current owner who had taken title through a purchaser at a judicially ordered sale.
 

 Petitioner’s CPLR article 78 challenge to DHCR’s determination not to assess full liability against the current owner was denied by Supreme Court. On appeal, the Appellate Division reversed (230 AD2d 631), reasoning that nothing in the regulation at issue dictates the conclusion that the judicial sale exemption should be applied to successor purchasers. The Court noted that successor purchasers are able to apprise themselves of any overcharges and thereby have the opportunity, when purchasing property, to obtain a clause in the contract of sale to protect themselves in the event of overcharge liability. We granted DHCR leave to appeal, and now reverse.
 

 We have repeatedly held that the interpretation given to a regulation by the agency which promulgated it and is respon
 
 *549
 
 sible for its administration is entitled to deference if that interpretation is not irrational or unreasonable (see,
 
 Matter of New York State Assn. of Life Underwriters v New York State Banking Dept.,
 
 83 NY2d 353, 359-360;
 
 Matter of Howard v Wyman,
 
 28 NY2d 434, 437-438,
 
 rearg denied
 
 29 NY2d 749;
 
 see also, Matter of Versailles Realty Co. v New York State Div. of Hous. & Community Renewal,
 
 76 NY2d 325, 330,
 
 rearg denied
 
 76 NY2d 890). We conclude that DHCR’s interpretation of the judicial sale exemption to include successor purchasers is rational, and consistent with the policies behind both the imposition of carryover liability in general and the judicial sale exemption from such liability.
 

 Carryover liability for rent overcharges had been judicially imposed before the promulgation of 9 NYCRR 2526.1 (f) (2)
 
 (see, Turner v Spear,
 
 134 Misc 2d 733;
 
 see also, Coulston v Singer,
 
 86 Misc 2d 1001). The rationale for carryover liability was derived from the requirement of section 42 (A) of the former Rent Stabilization Code which mandated that landlords keep and preserve sufficient records to determine the legal rent at all times
 
 (see, Matter of Greenthal Co. v State Div. of Hous. & Community Renewal,
 
 126 Misc 2d 795, 799). Hence, a successor landlord would always be able to ascertain whether the previous owners had been guilty of overcharges and protect itself accordingly
 
 (see, Turner v Spear, supra,
 
 at 735-736).
 

 By the same token, a judicially created exemption from carryover liability was applied for landlords whose title derived from a judicial sale where the appropriate rental records were not available. The grounds for this exemption were twofold: (1) that it was inequitable to impose carryover liability in the context of a judicially ordered sale, because the debtor/owner would have no incentive to furnish records to the purchaser; and (2) imposing such liability on judicial sale purchasers would have an adverse impact on marketability in such sales
 
 (see, e.g., Matter of Sharon Towers Realty v New York State Div. of Hous. & Community Renewal,
 
 Sup Ct, Queens County, July 25, 1988, Dunkin, J., index No. 3645/88;
 
 Matter of Herman Mgt. v New York City Conciliation & Appeals Bd.,
 
 Sup Ct, NY County, Aug. 16, 1985, Pecora, J., index No. 7771/85,
 
 affd without opn
 
 130 AD2d 987).
 
 *
 
 Thus, in the context of the assessment of a related overcharge penalty against a successor
 
 *550
 
 landlord for the failure to produce the records which had been unavailable at the prior judicial sale, one court stated:
 

 "[although section 42 (A) of the Rent Stabilization Code provides protection for tenants, an [owner] who acquires a building [from the] trustee in bankruptcy
 
 should have some equitable protections
 
 against precipitous rent decreases which can result from the failure to produce a full rental history.
 
 Otherwise it will become unduly burdensome for anyone to purchase a building from a trustee in
 
 bankruptcy”
 
 (Matter of Park Towers S. Co. v New York State Div. of Hous. & Community
 
 Renewal, NYLJ, Nov. 5, 1987, at 14, col 4 [emphasis supplied],
 
 mod
 
 Sup Ct, NY County, Dec. 22, 1988, Ascione, J., index No. 27788/86).
 

 DHCR’s application here of the judicial sale exemption for landlord carryover liability to a successor purchaser who did not have available the necessary presale rental records is not inconsistent with the regulatory language in context, or when taken as a whole. Section 2526.1 (f) (2) of 9 NYCRR provides:
 

 "[h]owever, in the absence of collusion or any relationship between such owner and any prior owner, where no records sufficient to establish the legal regulated rent were provided
 
 at
 
 a judicial sale, a current owner who purchases
 
 upon
 
 such judicial sale shall be liable only for his or her portion of the overcharges, and shall not be liable for treble damages upon such portion resulting from overcharges caused by any prior owner” (emphasis supplied).
 

 Thus, the regulatory language involved here does not literally limit the exemption to the purchaser
 
 at
 
 the judicial sale. Specifically, the condition precedent for the application of the exemption is that "no records sufficient to establish the legal regulated rent were provided
 
 at
 
 [the] judicial sale” (9 NYCRR 2526.1 [f] [2] [emphasis supplied]). Once met, the regulation grants the exemption not merely to the purchaser "at” the sale, but to "a current owner who purchases
 
 upon
 
 such judicial sale”
 
 (id.
 
 [emphasis supplied]).
 

 Employment of the phrase "at a judicial sale” with respect to the unavailability of rent records condition precedent, and
 
 *551
 
 the resultant exemption for a purchaser "upon” such sale is meaningful and apparently intended. "Upon” has as its primary meaning, and is synonymous with, "on”
 
 (see,
 
 Webster’s Third New International Dictionary [unabridged] 2517 [1981]). Among the meanings of "on” are: "used as a function word to indicate contiguity or dependence; esp. * * *
 
 source or support or basis
 
 on which something (as an action * * *) turns or rests”, and "used as a function word to indicate position with regard to place, direction, or time; esp. * * *
 
 occurrence
 
 at the same time as or
 
 following or as a result of something” (id.,
 
 at 1574 [emphasis supplied]).
 

 Under the foregoing common meanings, the exemption to a current owner upon a judicially ordered sale would apply to a successor to the purchaser at that sale, in that the "source” of its purchase was the judicial sale
 
 (see, id.),
 
 and its purchase was "following or as a result of’ the judicial sale
 
 (see, id.).
 

 The rationality of DHCR’s interpretation finds further support in the policy underpinnings of the exemption. As previously described, the reasons for the exemption are the common unavailability of prior rental records where a judicial sale has occurred, and the resultant adverse impact upon marketability at judicial sales if carryover liability was nevertheless imposed. These bases apply with equal, if not greater force to a successor purchaser after a judicial sale. First, because the likely unavailability of prejudicial sale rental records increases for successor purchasers, imposition of carryover liability on successor owners, based on prejudicial sale overcharges, would result in increased inequity. Additionally, the risk of unknown carryover liability will reduce the price a sophisticated investor will pay for the property from the purchaser at the judicial sale, and anticipation of this reaction will, inevitably, have an inhibitory effect on bids at the judicial sale. Alternatively, if that sophisticated successor-vendee were to insist upon " 'a protective clause in the sales contract for such a contingency’ ” (230 AD2d, at 632,
 
 supra),
 
 this would shift the risk of unknown contingent overcharge liability back to the purchaser
 
 at
 
 the judicial sale, the anticipation of which would have a similar inhibitory effect.
 

 It follows from the foregoing that DHCR’s extension of the judicial sale exemption to a successor purchaser who did not have rental records sufficient to establish the legal regulated rent is both reasonable and consistent with the underlying purposes of the regulation and, thus, should have been upheld
 
 (see, Matter of Salvati v Eimicke,
 
 72 NY2d 784, 791 ["DHCR’s
 
 *552
 
 interpretation of the statutes it administers, if not unreasonable or irrational, is entitled to deference”],
 
 rearg denied
 
 73 NY2d 995;
 
 see also, Matter of Ansonia Residents Assn. v New York State Div. of Hous. & Community Renewal,
 
 75 NY2d 206, 213). Petitioner’s alternative arguments for affirmance are either unpreserved or without merit.
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, and the petition dismissed.
 

 Chief Judge Kaye and Judges Titone, Bellacosa, Smith, Ciparick and Wesley concur.
 

 Order reversed, etc.
 

 *
 

 Foreclosures for property tax arrears and mortgage failures have been recently identified as major factors adversely affecting marketability of residential property in New York City, contributing significantly to the disinvestment trend in that industry
 
 (see generally,
 
 Bach and West,
 
 Housing on the
 
 
 *550
 

 Block, Disinvestment and Abandonment Risks in New York City Neighborhoods,
 
 Community Service Society of New York [1993]).