OPINION OF THE COURT
Edward H. Lehner, J.
The above two special proceedings are consolidated herein for disposition.
In the initial proceeding, commenced by Alvin Johnson individually and as president of the unincorporated association of tenants residing at 1900 Lexington Avenue (the building), petitioner seeks to enjoin the respondent UPACA Terrace Houses, Inc., the owner of the building (the owner), from prepaying the mortgage on the building currently held by respondent New York State Urban Development Corporation (UDC). The effect of a prepayment is that the building, which was built in 1974, would no longer be supervised by respondent Division of Housing and Community Renewal (DHCR) under *254 article II of the Private Housing Finance Law, commonly referred to as the Mitchell-Lama Law. UDC and DHCR have cross-moved to dismiss the proceeding pursuant to CPLR 3211 (a) (2) and (3).
The second proceeding commenced by the same petitioner is solely against DHCR and seeks to set aside the issuance by it of a certificate of no-objection (the certificate) to the dissolution of the owner.
Petitioner asserted that in order to prepay the mortgage, which is currently due in 2018, the owner is required to procure the consent of the State Comptroller pursuant to section 26 (3) of the Private Housing Finance Law because prepayment will result in the money being paid to a state entity. Such subdivision reads in part as follows:
“Any bonds or notes issued by the company and any mortgages relating thereto may authorize the company, with the consent of the state comptroller in the case of a state-aided project, or the supervising agency in the case of a municipally-aided project, to prepay the principal of the loan.” (Private Housing Finance Law § 26 [3].)
Section 35 (2) of the Private Housing Finance Law provides:
“A company aided by a loan made after May first, nineteen hundred fifty-nine, may voluntarily be dissolved, without the consent of the commissioner or of the supervising agency, as the case may be, not less than twenty years after the occupancy date upon the payment in full of the remaining balance of principal and interest due and unpaid upon the mortgage or mortgages and of any and all expenses incurred in effecting such voluntary dissolution.”
Petitioner also maintains that since the mortgage does not specifically authorize the mortgagor to prepay the indebtedness, the owner may not do so notwithstanding any statutory authorization (tr at 12), and that an analysis under the State Environmental Quality Review Act (SEQRA) was also required.
UDC argues, in support of its dismissal motion, that the proceeding is premature as all that it has done is advise the owner of the amount necessary to satisfy the mortgage it holds. The owner contends that the above-quoted section referring to the approval of the Comptroller in order to prepay a mortgage is not applicable here because the mortgage payments do not go into the state coffers, but rather are paid to UDC, a public ben *255 efit corporation created pursuant to Laws of 1968 (ch 174, as amended [McKinney’s Uncons Laws of NY § 6251 et seq.]) to aid economic development and create low-income housing. The fact of the matter is that by advising the owner of the amount necessary to satisfy the mortgage, UDC has consented that upon making such payment the owner may satisfy the mortgage indebtedness, asserting in the affidavit of Jacqueline Dalton that “[o]nce a borrower has made all payments and otherwise complied with all applicable laws and regulations UDC has no legal grounds to refuse to issue a satisfaction of mortgage.” UDC maintains that it is entirely up to DHCR to determine whether the owner may be dissolved.
Due to the fact that at the time of the oral argument of the motion in the initial proceeding DHCR had not issued a certificate, that proceeding was then dismissed as against it (tr at 54).
Although upon dissolution of the owner, the building would no longer be subject to DHCR supervision under the Mitchell-Lama Law, DHCR represents that the overwhelming majority of the tenants would not have their rents increased due to the federal enhanced Section 8 and low-income housing tax credit programs applicable to the building, which aire administered by it. The effect, however, is that upon a vacancy the rents may rise to a market rent, but since the only persons who can be admitted as tenants of the building must qualify as low-income occupants, the result would be that the federal government would be paying the landlord the amounts of rent due in excess of the subsidized rentals payable by the tenants.
Subsequent to the oral argument on the initial proceeding, on May 28, DHCR issued the certificate, finding that the owner had satisfactorily complied with the requirements set forth in its regulations (9 NYCRR 1750.1 et seq.) relating to the dissolution of entities owning a Mitchell-Lama housing development. DHCR points out that in order to obtain the certificate, the owner committed to spending over four million dollars to upgrade the building, and that the issuance only occurred after meetings with the tenants of the building and their representatives. The purpose of the regulations is stated in section 1750.1 to be
“to assure full disclosure to all residents and the public of plans proposed by the housing company to leave the jurisdiction of [DHCR] . . . , to effect a smooth transition of the management of a housing development and to assure that all actions required *256 to be taken by the housing company have been performed prior to the dissolution thereof and to ensure that projects are in sound physical condition to protect the occupants thereof and their long term viability.”
Section 1750.3 requires a housing company intending to dissolve to give DHCR a year’s notice and provide certain designated information, and section 1750.4 mandates that the company give notice of a public meeting regarding the proposed dissolution to each of the tenants and the local elected public officials, which notice must set forth a “plan for transition and future management,” as well as “initial rents upon dissolution” (9 NYCRR 1750.4 [d] [1], [2]). Pursuant to section 1750.6, the housing company must provide DHCR with “a list of the requirements of the mortgagee(s) to prepay the mortgage(s),” and under section 1750.10, the housing company must deliver a physical condition survey to DHCR, which must “determine if the survey is sufficient and properly addresses the needs of the property which must be resolved prior to the dissolution.”
Upon the housing company’s compliance with that provision of the regulations, section 1750.14 states that DHCR “shall issue a certification to the Secretary of State stating that the requirements of the [Private Housing Finance Law] have been complied with and that [DHCR] has no objection to the filing by the housing company of the certificate of dissolution.” It is evident that these regulations, for which no party could provide any specific statutory authority, in essence create a disclosure process and not an adversary procedure as in DHCR’s rent regulation jurisdiction and, in that sense, is somewhat similar to the disclosure requirements of the Martin Act administered by the Attorney General (General Business Law § 352-e).
On the second proceeding against DHCR regarding the issuance of the certificate, the parties agreed that since no new papers were submitted in opposition to the petition the court may consider the papers submitted on the initial proceeding as opposition to the later proceeding.
An examination of the extensive administrative record indicates that DHCR, prior to issuing the certificate, complied with its own regulations with respect to the issuance thereof, and there was a rational basis for concluding that the owner was entitled to the certificate, which determination was not arbitrary or capricious. (See generally Matter of Peckham v Calogero, 12 NY3d 424 [2009]; Kurcsics v Merchants Mut. Ins. Co., *257 49 NY2d 451 [1980]; Matter of Gaines v New York State Div. of Hous. & Community Renewal, 90 NY2d 545 [1997]; Apfelberg v East 56th Plaza, 78 AD2d 606 [1st Dept 1980].)
The argument that DHCR’s process should have included compliance with the SEQRA requirements with respect to this single building (petition at 87-89) lacks merit.
While petitioner is correct that, absent a prepayment authorization in the governing instruments, a mortgagor does not have the right to prepay a mortgage, the absence of a prepayment authorization does not prevent a mortgagee from voluntarily consenting to the prepayment. (See 2550 Olinville Ave. v Crotty, 185 AD2d 200 [1st Dept 1992].) That is what has occurred here as UDC, the mortgagee, has indicated no objection to the prepayment by the owner. This is within its rights as an independent public benefit corporation since the building has been operated under the Mitchell-Lama program for well beyond the 20-year period referred to in above-quoted Private Housing Finance Law § 35 (2).
With respect to the provision of section 26 (3) requiring the consent of the State Comptroller to the prepayment of a “state-aided” loan, that provision does not apply to this loan by UDC as the mortgage debt would not be paid to the Comptroller as the loan was not made by the State. Rather, the proceeds are to be paid to UDC and there is no authorization for the Comptroller to deny UDC, which was created by the legislature in 1968, the right to obtain prepayment of a mortgage held by it so that it might employ the proceeds for such other projects as its board of directors may determine best comport with its public mission as set forth in McKinney’s Unconsolidated Laws of NY § 6252.
In view of the foregoing, the motions of petitioner in these two proceedings are both denied and the petitions are dismissed.