12-2834(L)
Charron v. Wiener

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2012

(Argued: April 22, 2013     Decided: September 30, 2013)

Docket Nos. 12-2834-cv(L), 12-2907-cv(CON)

MARJORIE CHARRON, THEODORE CHARRON, ANDRES MARES-MURO,
RAYMOND ANDREW STAHL-DAVID, KIM POWELL,
on behalf of themselves and all others similarly situated,

*Plaintiffs-Appellants*,

ENRIQUE SUAREZ, HAMIDA MOUMOUNI, DIOGENES ABREU,

*Objectors-Appellants*,

BUYERS AND RENTERS UNITED TO SAVE HARLEM, ANTHONY CASANOVAS, KAREN
FLANNAGAN, TRACEY MOORE, RUSSELL TAYLOR, DIANE TRUMMER,

*Plaintiffs*,

ALL OTHERS SIMILARLY SITUATED,

*Plaintiffs-Appellees*,

— v. —

1

JOEL WIENER, PINNACLE GROUP NY LLC,

*Defendants-Appellees*,

PINNACLE GROUP CORPORATION, PINNACLE GROUP, LLC,

*Defendants.*[*]

_____

B e f o r e :

CALABRESI, LIVINGSTON, and LYNCH, *Circuit Judges.*

_____

Class representatives and objectors appeal from an order of the United States District Court for the Southern District of New York (Colleen McMahon, *Judge*) approving a class settlement, pursuant to Federal Rule of Civil Procedure 23(e), of Racketeer Influenced and Corrupt Organizations Act ("RICO") and New York State Consumer Protection Act claims of fraud in setting and charging illegally high rents to tenants of rent-regulated apartments in New York City. They argue that the district court erred by failing to adequately protect the interests of absent class members who held certain types of claims and by

_____

[*] The Clerk of Court is respectfully directed to amend the official caption in this case to conform with the caption above.

2

otherwise abusing its discretion in approving the settlement as fair under the factors laid out in <u>Detroit v. Grinnell Corp.</u>, 495 F.2d 448 (2d Cir. 1974).

AFFIRMED.

––––––––––––

HAROLD F. MCGUIRE (Kenneth Rosenfeld, James M. Baker, Matthew J. Chachère, Northern Manhattan Improvement Corporation Legal Services, Harvey David Epstein, David A. Colodny, Urban Justice Center, New York, New York, *on the brief*), Yankwitt & McGuire, LLP, White Plains, New York, *for* Objectors-Appellants.

MARC IAN GROSS, Pomerantz Grossman Hufford Dahlstrom & Gross LLP, New York, New York, *for* Plaintiffs-Appellants.

RICHARD F. LEVY (Joshua H. Rubin, Marisa K. Perry, Katherine A. Neville, *on the brief*), Jenner & Block LLP, New York, New York, *for* Plaintiffs-Appellees.

MITCHELL A. KARLAN, Gibson, Dunn & Crutcher LLP, New York, New York, *for* Defendants-Appellees.

––––––––––––

GERARD E. LYNCH, *Circuit Judge*:

This appeal presents us with a unique variant of the more common general question of when a class-action settlement requires subclassing of the plaintiff class to ensure adequacy of representation pursuant to Federal Rules of Civil

Procedure 23(e) and (a)(4).  The district court certified the plaintiff classes, which comprise more than 20,000 current and former occupants of rent-regulated apartments in New York City, pursuant to Rules 23(b)(3) (damages) and (b)(2) (injunctive relief).  The settlement that was eventually approved by the district court provides no damages relief for claims that tenants were overcharged rent by prior landlords, rather than by defendants, or for claims for rent overcharges that predate July 11, 2004 (together, the "Excluded Overcharge Claims").  Appellant objectors to the settlement contend that the lack of separate representation for tenants with Excluded Overcharge Claims during settlement negotiations violated Rule 23 and constitutional due process, and that the district court was therefore required to establish subclasses for tenants who had such claims.  Because we reject that contention, and because we also conclude that the settlement was fair, reasonable, and adequate, as required by Rule 23(e)(2), we affirm the judgment of the district court.

**BACKGROUND**

I.    Plaintiffs' Allegations

On September 14, 2007, plaintiffs Marjorie Charron, Theodore Charron, Andres Mares-Muro, Raymond Andrew Stahl-David, and Kim Powell, along

4

with Buyers and Renters to Save Harlem, Anthony Casanovas, Karen Flannagan, Tracey Moore, Russell Taylor, and Diane Trummer, filed an amended complaint in the United States District Court for the Southern District of New York. That complaint, as amended again on October 24, 2007, alleged that defendants had engaged in a conspiracy to fraudulently increase rents payable by tenants in over 400 buildings they owned in New York City, in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968, and the New York Consumer Protection Act ("NYCPA"), which prohibits "[d]eceptive acts or practices in the conduct of any business," N.Y. Gen. Bus. Law § 349(a). Specifically, plaintiffs alleged that defendants Pinnacle Group NY LLC, Pinnacle Group Corporation, and Pinnacle Group, LLC (collectively, "Pinnacle")[1] and its principal, Joel Wiener, charged tenants higher rents than allowed by New York City rent regulations,[2] refused to acknowledge tenants' succession rights,

---

[1] Only Pinnacle Group NY LLC was named as an appellee.

[2] Certain apartments in New York City are "rent-stabilized," meaning that New York City regulations define how much their rent can be raised upon renewal of a lease by a tenant, as well as how much their rent can be raised when a new tenant moves in. See, e.g., N.Y. Rent Stabilization Code §§ 2521-22. Regulations also provide that where a prior landowner overcharged a tenant for rent, a subsequent landowner shall generally be responsible for all overcharge penalties. See Gaines v. N.Y. State Div. of Hous. & Cmty. Renewal, 90 N.Y.2d

5

misrepresented tenants' rent payment histories, filed meritless eviction suits, and otherwise harassed tenants. The complaint alleged that defendants did so in order to raise rents above legally chargeable levels and to drive tenants out of rent-regulated units, leading to the deregulation of those units and thus allowing defendants to sell the units or charge new tenants a higher, market-rate monthly rent.

II.     Class Certification

On June 30, 2009, plaintiffs moved pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) to certify a class of approximately 20,000 former and current residents of Pinnacle-owned buildings. On behalf of the class, they sought compensatory, punitive, and statutory (treble) damages, as well as attorney's fees. They also sought injunctive relief prohibiting defendants from engaging in the conduct alleged in the complaint, appointment of an independent monitor to supervise defendants' compliance, and regular audits of defendants' books. Plaintiffs' proposed class was defined in the Second

---

545, 547 (1997). This "carryover liability" derives from the requirement that landlords "keep and preserve sufficient records to determine the legal rent at all times," which ensures that "a successor landlord would always be able to ascertain whether the previous owners had been guilty of overcharges and protect itself accordingly." Id. at 549 (citations ommitted).

6

Amended Complaint as

> All persons who, *at any time from July 11, 2004 to the date of certification*, leased an apartment in the City of New York directly or indirectly owned in whole or in part by the Pinnacle Enterprise. This class seeks certification of claims for declaratory and injunctive relief, and for damages pursuant to 18 U.S.C. § 1962(d) and New York General Business Law § 349(h).

Pls.' Second Am. Compl. ¶ 151 (emphasis added).

On April 27, 2010, the district court certified two classes: an injunctive-relief class comprising all current residents of rent-regulated apartments owned by Pinnacle, and a damages class comprising "all persons who, at any time between July 11, 2004 and the date of this opinion [April 27, 2010], were tenants in rent-regulated apartments in New York City directly or indirectly owned in whole or in part by" Pinnacle. Charron v. Pinnacle Group N.Y. LLC, 269 F.R.D. 221, 244 (S.D.N.Y. 2010). The district court found that the proposed injunctive-relief class satisfied Rule 23(a)'s four requirements – numerosity, commonality, representativeness, and adequacy of representation – as well as Rule 23(b)(2)'s requirement that injunctive relief be appropriate to the class as a whole. The district court found that while the proposed damages class satisfied Rule 23(a)'s requirements, it did not satisfy Rule 23(b)(3)'s requirement that questions of law

or fact common to the members of the class predominate, given the members' individualized issues relating to injury and causation.[3]   However, even though the action as a whole failed to satisfy Rule 23(b)(3)'s predominance requirement, the district court nonetheless certified a class that was limited to certain common liability issues that *did* satisfy Rule 23(b)(3)'s predominance and superiority requirements.  See Fed. R. Civ. P. 23(c)(4) ("[A]n action may be brought or maintained as a class action with respect to particular issues.").

III.    The Settlement

After class certification but before any discovery on the merits of the claims had taken place, the parties engaged in extensive settlement negotiations under the supervision of a magistrate judge (Ronald L. Ellis, *Magistrate Judge*).  The parties were represented by prominent law firms –- the class by Jenner & Block, and Pinnacle by Gibson, Dunn & Crutcher.  Class counsel were assisted by Andrew Scherer, an expert in New York landlord-tenant law and rent regulation statutes, and the author of the treatise Residential Landlord-Tenant Law in New York.  See Charron v. Pinnacle Group N.Y. LLC, 874 F. Supp. 2d 179, 189

_____

[3] The district court rejected plaintiffs' proposed solution to divide the class into four subclasses, finding that such division would not resolve the predominance issue.

8

(S.D.N.Y. 2012).

Negotiations began in the fall of 2010 and a preliminary formal settlement agreement was reached on August 9, 2011. On August 17, 2011, the magistrate judge approved the settlement. Under the settlement, Pinnacle agreed to maintain "best practices," enforced by a court-appointed claims administrator, with respect to: setting initial rents for new tenants and rent increases for existing tenants; eviction proceedings against tenants; repairs and tenant services; and staff training. Pinnacle was also required to undergo an audit of a random sample of its leases issued from 2008 to 2010 and, depending on the outcome of that audit, potentially to submit to a more extensive audit of all its leases from that period.

Pinnacle also agreed to institute a claims process to pay damages for past rent overcharges as well as for "harassment" claims. Under this system, to be administered by a court appointee, tenants alleging rent overcharge claims may recover their actual damages or, if they can prove willfulness on the part of Pinnacle, double damages. For harassment claims, tenants may recover the greater of a pre-set penalty ranging from $500 to $1500 or their actual damages. The process is informal: tenants may prove their claims through a simple form

9

and are not required to adhere to traditional rules of evidence. Pinnacle further agreed to pay a total of $2.5 million to certain community legal services organizations and other nonprofit groups, to enable them to provide assistance to tenants wishing to participate in the claims process.

Finally, Pinnacle agreed to pay class counsel $1.25 million in attorney's fees and another $200,000 in expenses.

Importantly for purposes of this appeal, the settlement excluded certain types of claims. In particular, two subgroups of claims otherwise included by the class definition were excluded from the settlement. First, the settlement provided damages relief only for rents set by Pinnacle after July 11, 2004.[4] Second, the settlement specified that, under the claims administration process, it would be "a defense to any allegation of overcharge" that Pinnacle "relied on a rent registered by a prior owner with the New York State Division of Housing and Community Renewal . . . or contained in documentation from a prior owner of the [tenant's] building." J. App'x at 276-77.

---

[4] A rider later clarified that class members "are barred from seeking, through the claims process provided in the Agreement, money damages for individual rent overcharge claims based on" rent set before July 11, 2004. J. App'x at 425.

Following an extended notice period with substantial outreach to class members, only about 1% of the class members opted out or objected to the settlement. Of the more than 20,000 class members, only 118 objected, and 141 opted out; 56 submitted unsolicited letters in support of the settlement. Id. at 190.

After conducting a fairness hearing, the district court issued a 54-page opinion approving the settlement. Id. It found that notice of the proposed settlement was adequate, that the settlement was fair, adequate, and reasonable pursuant to Rule 23(e), and that there were no intra-class conflicts.

## DISCUSSION

Appellants, the initial class representatives as well as three other class members who objected to the settlement, now challenge both the fairness, adequacy, and reasonableness of the settlement and the adequacy of the class members' representation.

I.    Standard of Review

A district court's approval of a class action settlement is reviewed for exceeding its discretion. McReynolds v. Richards-Cantave, 588 F.3d 790, 800 (2d Cir. 2009). A district court abuses its discretion when its decision rests on an

11

error of law or a clearly erroneous factual finding, or when its decision cannot be located within the range of permissible decisions. In re Literary Works in Elec. Databases Copyright Litig., 654 F.3d 242, 249 (2d Cir. 2011). In class settlement cases, we accord the trial judge's views "great weight" because of her position "on the firing line," where she is "exposed to the litigants, and their strategies, positions and proofs," Joel A. v. Giuliani, 218 F.3d 132, 139 (2d Cir. 2000) (internal quotation marks omitted), and we will "disturb a judicially-approved settlement only when an objector has made a clear showing that the District Court has abused its discretion," D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001) (internal quotation marks omitted). We review factual findings relating to the settlement for clear error and issues of law de novo. McReynolds, 588 F.3d at 800.

II.    Analysis

    A.    Fairness of the Settlement

    Federal Rule of Civil Procedure 23(e)(2) provides that a court may approve a class action settlement only if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The court must review the negotiating process leading up to the settlement for procedural fairness, to ensure that the settlement resulted from an

12

arm's-length, good faith negotiation between experienced and skilled litigators.

See McReynolds, 588 F.3d at 803-04; D'Amato, 236 F.3d at 85.

The court must also evaluate substantive fairness, considering the nine

Grinnell factors set forth in Detroit v. Grinnell Corp.:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

495 F.2d 448, 463 (2d Cir. 1974) (citations omitted), *abrogated on other grounds by*

Goldberger v. Integrated Res., Inc., 209 F.3d 43 (2d Cir. 2000); see also

McReynolds, 588 F.3d at 804.

The district court carefully analyzed each factor in its thorough opinion,

finding that "[o]n balance, the Grinnell factors weigh[ed] heavily in favor of final

approval of the Settlement Agreement." Charron, 874 F. Supp. 2d at 196. It

found that eight of the nine factors weighed in favor of approval, while the ninth

13

(defendants' ability to withstand a greater judgment) was neutral. <u>Id</u>. at 201. We cannot say that the district court's well-reasoned conclusion constituted an abuse of discretion, especially given the deference we accord to trial courts in these situations. <u>See</u> <u>Joel A.</u>, 218 F.3d at 139. The district court's reasoning is set out in detail in its opinion, and only a few of the factors require further discussion on appeal.[5]

        1.     <u>The Need for Further Discovery</u>

Appellants argue that concluding the settlement before merits discovery "infected the analysis of virtually every other <u>Grinnell</u> factor" to their detriment. We conclude, however, that the discovery conducted was sufficient to permit the district court to evaluate the claims and settlement. Objectors to a settlement have no automatic right to discovery or an evidentiary hearing in order to substantiate their objections. <u>See</u>, <u>e.g.</u>, <u>Malchman v. Davis</u>, 761 F.2d 893, 897-98 (2d Cir. 1985), abrogated on other grounds by <u>Amchem Prods., Inc. v. Windsor</u>, 521 U.S. 591 (1997). Instead, where objectors raise "cogent factual objections to

---

[5] To the extent that appellants argue that notice was inadequate and that the district court therefore improperly weighed the reaction of the class to the settlement, the district court's opinion adequately explained why the notice provided to the class was sufficient. <u>Charron</u>, 874 F. Supp. 2d at 192-94.

14

the settlement," id. at 897 (internal quotation marks omitted), and prior discovery was insufficient or nonadversarial, we instruct district courts "to exercise particular care to see to it that the non-assenting plaintiff [or, by logical extension, objecting class member] has had a full opportunity to develop the basis for his objection." Saylor v. Lindsley, 456 F.2d 896, 901 (2d Cir. 1972); cf. Maywalt v. Parker & Parsley Petroleum Co., 67 F.3d 1072, 1078 (2d Cir. 1995) ("The ultimate responsibility to ensure that the interests of class members are not subordinated to the interests of either the class representatives or class counsel rests with the district court.").

Here, the district court treated the objections seriously, delaying the fairness hearing many months, requiring revised notice and a 20-building sampling, and ordering the parties to answer detailed questions about the effects of the settlement on various hypothetical class members – actions that imposed significant cost and burden on Pinnacle and on Class Counsel. While the district court denied the objectors' request for lease and rent registration histories for each of the buildings in the sampling, it did so because the objectors could not articulate why they needed the information to substantiate their objections. Ultimately, the preliminary discovery did not bear out the opponents' objections.

15

On this record, we cannot find that the district court exceeded its discretion by declining to order further discovery and approving the settlement based on the information before it.

### 2. The Risks of Maintaining a Class Action

Appellants argue that the district court heavily relied on the specter of decertification if the case were to proceed without explaining why the Supreme Court's decision in Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541 (2011), posed a significant risk of decertification in this specific case. The district court concluded, after examining the facts of this case and recent jurisprudence interpreting Dukes, that there was a "substantial chance" that a motion to decertify the class would succeed were the settlement to be rejected, and that this possibility weighed strongly in favor of approval.

It is unnecessary, and would be inappropriate, for us to conduct a purely hypothetical discussion of the ultimate merits of a potential decertification motion. Given defendants' repeated statements that they will immediately move for decertification if the settlement is rejected, the large size of the class, the complicated and diverse claims asserted by plaintiffs, and the heightened legal uncertainty necessarily injected by significant recent Supreme Court authority

16

relevant to the propriety of class certification, however, we cannot find that the district court abused its discretion in finding that the class faced significant risks of decertification, that decertification would drastically reduce the chances of any member of the class achieving meaningful relief, and that the litigation risks attendant to these possibilities weighed heavily in favor of the fairness of a settlement under which plaintiffs achieved substantial benefits that (as in any settlement) fell short of what they might have hoped to achieve.[6]

In conclusion, the district court's careful review of the settlement warrants the great deference we normally accord to trial court findings with respect to the fairness of class action settlements. The district court did not simply rubber-stamp the settlement on the basis of boilerplate findings, but wrote a long and careful opinion after engaging in a serious process to air and examine the objections to the settlement. Appellants' claims that the district court's balancing of the Grinnell factors was inadequate boil down to the usual contention that the

---

[6] One further issue, raised by appellants not in connection with the overall fairness of the settlement but in the context of their claims of inadequate representation, bears on but does not ultimately affect our analysis of the fairness of the settlement. That issue, which concerns a possible error in calculating the statute of limitations applicable to the class's RICO claims, is discussed in note 9, below.

settlement did not get enough for the class.  We find no fault in the district court's rejection of that contention.

B.     Adequacy of Representation

Federal Rule of Civil Procedure 23(a)(4) requires that in a class action, "the interests of the class" must be "fairly and adequately protect[ed]."  Fed. R. Civ. P. 23(a)(4).  To ensure that all members of the class are adequately represented, district courts must make sure that the members of the class possess the same interests, and that no fundamental conflicts exist among the members.  In re Literary Works, 654 F.3d at 249; see also Denney v. Deutsche Bank AG, 443 F.3d 253, 268 (2d Cir. 2006).  Adequacy of representation must be determined independently of the fairness of the settlement: "Rule 23 requires protections under subdivisions (a) and (b) against inequity and potential inequity at the precertification stage, quite independently of the required determination at postcertification fairness review under subdivision (e) that any settlement is fair in an overriding sense."  Ortiz v. Fibreboard Corp., 527 U.S. 815, 858 (1999); see also Amchem, 521 U.S. at 622 ("Federal courts . . . lack authority to substitute for Rule 23's certification criteria a standard never adopted – that if a settlement is 'fair,' then certification is proper.").

Where a fundamental conflict exists that goes "to the very heart of the litigation," Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C., 504 F.3d 229, 246 (2d Cir. 2007), it can be cured by dividing the class "into homogeneous subclasses . . . with separate representation to eliminate conflicting interests of counsel." Ortiz, 527 U.S. at 856. Such subclassing may provide a key "structural assurance of fair and adequate representation for the diverse groups and individuals affected," Amchem, 521 U.S. at 627, and "serve[s] to inhibit appraisals of the chancellor's foot kind – class certifications dependent upon the court's gestalt judgment or overarching impression of the settlement's fairness," id. at 621.

Appellants argue that the settlement in effect created two subclasses with a fundamental conflict: (1) those who may bring their rent overcharge claims before the Claims Administrator, and (2) those with Excluded Overcharge Claims, whose rents (a) were set unlawfully high before Pinnacle took over their buildings, or (b) were set on or before July 11, 2004. Appellants argue that because the settlement discriminates against members with Excluded Overcharge Claims, it creates a fundamental conflict of interest among these two subclasses. They argue that because the two subclasses were not separately represented, as

19

required by Rule 23(a)(4) and Ortiz, the settlement must be vacated.

As a preliminary matter, we note that unlike the situation in Amchem, Ortiz, and In Re Literary Works, the settlement here was not being approved at the same time that the class was being certified. Where settlement and certification proceed simultaneously, courts must give heightened attention to the requirements of Rule 23(a). See Ortiz, 527 U.S. at 848-49; Amchem, 521 U.S. at 620; In Re Literary Works, 654 F.3d at 249. That is so because the certification of a mandatory settlement class "effectively concludes the proceeding save for the final fairness hearing," and there is thus a heightened risk of conflating the fairness requirements of Rule 23(e) with the independent requirement of "rigorous adherence to those provisions of the Rule designed to protect absentees," such as Rules 23(a) and (b). Ortiz, 527 U.S. at 849 (internal quotation marks omitted).

Here, by contrast, appellants seek to challenge a subsequent *settlement* on Rule 23(a) grounds, asserting conflicts never raised at the certification stage. In its April 27, 2010 order certifying the class in anticipation of litigation, the district court carefully considered each 23(a) factor, including adequacy of representation, and deemed them to be satisfied. At that stage, no party argued

20

that there were intra-class conflicts based on the nature of the different claims held by different class members. Nor did any appellant ask for separate representation. Rather, plaintiffs argued that Class Counsel could adequately protect the interests of the class. To be sure, appellants argue that class conflicts arose *after* certification, during the course of settlement negotiations that concluded in August 2011. To the extent these conflicts were not apparent at certification, and assuming they were, indeed, "fundamental," Rule 23 and due process would require renewed scrutiny of the suitability of the class. See, e.g., Fed. R. Civ. P. 23(c)(1)(c) ("An order that grants or denies class certification may be altered or amended before final judgment."); Fed. R. Civ. P. 23(c)(5) ("When appropriate, a class may be divided into subclasses that are each treated as a class under this rule."); Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 812 (1985) ("[T]he due process clause of course requires that the named plaintiff [in a class action] at all times adequately represent the interests of the absent class members."). Cf. Joel A., 218 F. 3d at 140 (holding objection to settlement on adequacy of representation grounds waived where the "perceived differences [among] subclass members were apparent when the subclasses were certified" and no objection was made at time of certification decision). However, in this

21

specific and factually complex situation, we do not find a fundamental conflict between class members necessitating separate representation.

First, it is important to distinguish, as appellants for the most part do not, the RICO claims that were brought as part of this case from any potential rent overcharge claims under New York City rent stabilization law, which were not included in plaintiffs' complaint. Under New York City law, landlords of rent-regulated apartments must charge the correct rent under the complicated rent stabilization rules. See, e.g., N.Y. Rent Stabilization Code §§ 2521-2522. Class members who were overcharged are entitled, like other regulated tenants, to reimbursement for such overcharges, regardless of whether the overcharge was intentional, negligent, or the product of reasonable mistake.

The complaint in this case does not allege individualized claims of erroneously charged rents in violation of the stabilization rules. Indeed, it is difficult to see how such claims could possibly be brought on a class basis, since the sole issue in each individual's claim would be the correctness of that tenant's rent, based on the specific rent history of that apartment and its conformance to the correct calculation under the rules. Instead, the complaint alleges that the entire class was victimized by defendants' conduct of a single RICO enterprise

based on fraud and extortion. While the *damages* suffered by class members will vary, and will in many cases be based on the extent to which the relevant criminal conduct affected the rent paid by individual tenants, defendants' *liability* is based on fraudulent or other predicate criminal conduct.

Thus, in assessing the argument that various overcharged rent claims were excluded from the settlement, it is important to recognize that claims of rent overcharges *as such* were never part of the case in the first place. The claims that were addressed by the settlement are based on conscious wrongdoing by defendants themselves, including among other things *fraudulent* rent overcharges. To the extent that the settlement excludes overcharges resulting from rents erroneously set (whether fraudulently or otherwise) by prior landlords not affiliated with Pinnacle or the RICO enterprise alleged in the complaint, it excludes claims that are far more tenuous against defendants, and that (except to the extent defendants could be shown to have acted with fraudulent intent) were not part of the case at all.

Second, the settlement does not, by its terms, exclude any tenant, or type of tenant, from the claims process. It instead provides that *no* class member can bring Excluded Overcharge Claims through that process. Whether some

members are wholly excluded from the claims process depends on how many members have *only* Excluded Overcharge Claims. Appellants have not been able to estimate with any reliability the number of class members, if any, who may be in that category. The fact that a large number of class members have leases that pre-date Pinnacle, or that pre-date the cutoff, does not answer that question. Those members may still be eligible for harassment or eviction-related damages against Pinnacle, or may have rent overcharge claims related to post-2004 illegal rent overcharges.[7]

Appellants have not demonstrated that a significant number of class members' claims were excluded from the settlement. While appellants argue that 77% of the class may have Excluded Overcharge Claims, based on a representative sampling done by defendants in 2012, that number does not suffice to distinguish the alleged subclasses. To the contrary, it suggests that the exclusion of these claims affects not a unique subclass of the certified damages class, but the vast majority of class members. Appellants were unable to quantify

---

[7] For example, tenants who were improperly overcharged for capital improvements after 2004, or as to whom Pinnacle engaged in other unlawful rent-setting practices during that period, may bring such overcharge claims through the claims process.

how many class members had rent overcharge claims that come within the claims process, how many had only Excluded Overcharge Claims but nonetheless could recover on other claims (such as harassment claims), and how many class members, if any, were left without any claims for damages that could be brought in the claims process. Given that the settlement provides the considerable benefit of a streamlined claims process that is open to all members of the class, and that it has not been shown that any significant number of class members are excluded from benefitting from that process by the exclusion of certain types of relatively weak claims, we cannot find that the exclusion of those claims creates a fundamental conflict among class members sufficient to require the creation of separate subclasses.

Third, while the settlement does not provide relief for the Excluded Overcharge Claims, it does not *extinguish* them, or release Pinnacle from liability for overcharge claims under New York City rent regulations. This case therefore does not present the situation the Supreme Court faced in <u>Amchem</u>, <u>Ortiz</u>, and <u>In re Literary Works</u>, where the defendants were released from liability on certain claims that the settlements disfavored. Here, appellants remain free to bring the Excluded Overcharge Claims against defendants in other fora, presumably New

25

York state courts.[8]  At the same time, all class members are entitled to bring post-2004 overcharge claims based on Pinnacle's conduct via the claims process established by the settlement, without bearing the burden of proving that any overcharge was based on fraud.

Fourth, unlike in In Re Literary Works, the exclusion of certain claims here

---

[8] Appellants argue that their state rent overcharge claims may no longer be viable given the statute of limitations set forth in N.Y. C.P.L.R. § 213-a.  Such statute of limitations issues, however, do not render the settlement unfair to class members.  There may be many defenses to potential rent overcharge claims, but those defenses are independent of the settlement, which does not add to whatever burdens potential tenant-plaintiffs would otherwise have.  Given that rent stabilization claims were not alleged in plaintiffs' complaint, it was a reasonable decision by class counsel to leave the resolution of those claims (and whatever defenses may be asserted against them) to whatever forum is appropriate to hear them.

Moreover, to the extent that rent claims are implicated in the class action, any applicable statute of limitations may have been tolled during the pendency of this case.  See Cullen v. Margiotta, 811 F.2d 698, 719 (2d Cir. 1987) ("New York courts have, in the interest of avoiding court congestion, wasted paperwork and expense, long embraced the [equitable tolling] principles of [American Pipe & Constr. Co. v. Utah, 414 U.S. 538 (1974)]." (internal quotation marks omitted)), overruled on other grounds by Agency Holding Corp. v. Malley-Duff & Assocs., Inc., 483 U.S. 143 (1987).  The excluded claims are, as a matter of law, either barred by the statute of limitations or not, and tenants wishing to bring those claims either did or did not act reasonably in failing to file rent overcharge claims on the assumption that the statute of limitations on such claims, which were not directly brought as part of the RICO class action complaint, was tolled by the pendency of that complaint.  The settlement itself does not, and need not, resolve such issues, and the settlement itself does not release or otherwise impair those claims.

does not "provide[] strong evidence . . . of inadequate representation." 654 F.3d at 256. As discussed above, claims based on rents set by prior landlords do not easily fall within plaintiffs' core allegations of a RICO enterprise. Pinnacle's potential liability under New York law for prior landowners' overcharges on a "carryover liability" theory that sounds in negligence does not satisfy RICO's requirement of *conscious* wrongdoing. Similarly, while appellants argue that their pre-2004 claims would not be barred by RICO's or the NYCPA's statutes of limitations due to equitable tolling, the very need to litigate the applicability of equitable tolling make these claims weaker than post-2004 claims.[9]

---

[9] Appellants argue that if, by excluding pre-2004 claims, the settlement meant to exclude claims that were barred by the relevant statutes of limitations, it should have excluded pre-*2003* claims, as RICO's statute of limitations (unlike NYCPA's) is four years, not three. See Agency Holding Corp., 483 U.S. at 156. While any error is regrettable, we fail to see its relevance to the inquiry into adequacy of representation. As noted above, the exclusion of time-barred rent overcharges from the settlement did not provide strong evidence of inadequate representation because such claims were weaker than timely claims, given the necessity of arguing equitable tolling. Any error in determining the cut-off date does not change the analysis.

The July 2004 cutoff was predicated on the date chosen by plaintiffs for the beginning of the class period, which in turn was validated by the district court's earlier order denying defendants' motion to dismiss, which had ruled that "plaintiffs may not assert any claims which accrued prior to July 11, 2004." J. App'x at 148. As the district court recognized in its order approving the settlement, the cut-off date "was not determined in the context of the [s]ettlement negotiations; I fixed it [ ] back in 2010, before the [s]ettlement was on the table." J.

27

Finally, all class members who presently reside in Pinnacle-owned housing benefit from the injunctive measures provided for in the settlement, which require Pinnacle to agree to maintain "best practices," enforced by a court-appointed claims administrator, with respect to setting initial rents, setting rent increases, eviction proceedings, repairs and other services, and staff training.

All class settlements value some claims more highly than others, based on their perceived merits, and strike compromises based on probabilistic assessments. See, e.g., Weinberger v. Kendrick, 698 F.2d 61, 78 (2d Cir. 1982) (approving settlement that paid more for federal claims than for state law claims, finding that state law claims were less valuable because they would have been

App'x at 667. Counsel on both sides appear to have negotiated the settlement in the shadow of the district court's earlier rulings. Even if such rulings were erroneous, settlements may be based on the parties' expectations that stem from predicted, or prior, judicial rulings about the merits of the case. For the same reasons discussed above, therefore, any alleged subclass of post-2003, pre-2004 claims did not require separate representation.

This apparent error, however, does factor into our Rule 23(e) inquiry into the reasonableness of the settlement. While the possibility that some claims were erroneously excluded bears on Grinnell factor 8, the reasonableness of the settlement compared to what the parties could have received in litigation, the other Grinnell factors, especially the risk of decertification, still weigh heavily in favor of the settlement. Accordingly, any possible error in this regard does not undermine our conclusion that the district court's approval of the settlement was not an abuse of discretion.

more difficult to prove in court, and "that it was not unfair for the settlement's distribution formula to reflect this"). If these types of compromises automatically created subclasses that required separate representation, the class action procedure would become even more cumbersome than it already is, and would create even more transaction costs in the form of legal fees. We find that given the increased difficulty of litigating the Excluded Overcharged Claims, their exclusion from the settlement was reasonable and does not create serious intra-class conflicts or indicate inadequate representation by Class Counsel.

In summary, we find that a fundamental conflict did not exist between the members of the class, and that the Class Counsel's representation was adequate under Rule 23(a)(4). It was therefore not necessary to divide the class into subclasses with separate representation.

C.    Objections by All Named Plaintiffs

Finally, to the extent that appellants argue that the rejection of the settlement by all five remaining named class representatives requires its rejection by the Court, we cannot agree. As our sister circuits have noted, the assent of class representatives is not essential to the settlement, as long as the Rule 23 requirements are met. See Elliott v. Sperry Rand Corp., 680 F.2d 1225, 1226, 1228

(8th Cir. 1982); <u>Kincade v. Gen. Tire & Rubber Co.</u>, 635 F.2d 501, 508 (5th Cir. 1981) ("[T]he assent of named plaintiffs is not a prerequisite to the approval of a settlement." (internal quotation marks omitted)); <u>Laskey v. Int'l Union</u>, 638 F.2d 954, 957 (6th Cir. 1981) ("Accepting a settlement over the objections of the named representatives is not necessarily an abuse of discretion."); <u>Flinn v. FMC Corp.</u>, 528 F.2d 1169, 1174 n.19 (4th Cir. 1975). "Class counsel is supposed to represent the class, not the named parties: that the named parties objected does not prove the settlement was unfair or that the class counsel acted improperly." <u>Laskey</u>, 638 F.2d at 956. We believe those cases correctly state the law.

## CONCLUSION

Plaintiffs' complaint represented a daring and unconventional effort to turn New York City rent violations into RICO claims that could be pursued on a class-wide basis. The ensuing litigation has achieved significant benefits for the class, particularly in its injunctive aspects, against significant odds. While the settlement has its own unconventional aspects, and leaves much to be desired from the standpoint of the more militant members of the class (including the named plaintiffs), those less favorable aspects of the settlement are largely attributable to the precariousness of plaintiffs' claims. The district court

30

thoroughly and carefully reviewed the settlement and concluded that it was a fair and sensible way to resolve these claims. We cannot conclude that the district court exceeded its discretion when it did so. Nor can we conclude that the necessary compromise of some of the claims theoretically available to class members created a conflict of interest, or demonstrated inadequate representation, sufficient to require the creation of separately-represented subclasses.

For the foregoing reasons, we AFFIRM the judgment of the district court.